**In the Matter of FORECLOSURE FOR DELINQUENT LAND TAXES BY ACTION IN REM.**

**MANAGER OF DIVISION OF FINANCE OF JACKSON COUNTY, Respondent,**

v.

**PARCELS OF LAND ENCUMBERED WITH DELINQUENT TAX LIENS, Appellant,**

**180 Talmadge, Inc., Respondent,**

**Transcon Lines, Respondent,**

**T.C. Services, Respondent.**

**No. WD 52749.**

Missouri Court of Appeals, Western District.

Submitted Jan. 22, 1997.

Decided June 24, 1997.

Stephen B. Sutton, Kansas City, for Appellant.

William J. Gnefkow, Jr., Asst. County Counselor, Jackson County, Kansas City, for Respondent Manager of Division of Finance.

John F. Michaels, Kansas City, for Respondent 180 Talmadge, Inc.

Thomas N. Lane, Kansas City, for Respondent Transcon Lines.

Thomas G. Stoll, Kansas City, for Respondent T.C. Services.

Before ULRICH, C.J., P.J., and BERREY and SMART, JJ.

SMART, Judge.

This case concerns the issue of standing to appeal a ruling setting aside a tax foreclosure sale.

On May 16, 1994, the Director of Collections for Jackson County, Missouri, filed a petition pursuant to the Land Tax Collection Law, §§ 141.210 to 141.810, RSMo 1994, seeking foreclosure of tax liens on different parcels of land, including property located at 3811 Gardner ("Gardner Property") in Kansas City, Missouri. The petition alleged that the property taxes for 1990, 1991 and 1992

had not been paid. On March 14, 1995, the trial court entered judgment on the Director's petition, foreclosing on the liens and ordering the Gardner Property sold at public sale. The owner at that time was Transcon Lines, a California corporation. No one bid on the Gardner Property at the foreclosure sale, and the Gardner Property was therefore deemed to have been purchased by the Jackson County Land Trust.[1] Several weeks after the sale and before a confirmation hearing was held on the sale, Transcon Lines conveyed its interest in the Gardner Property by quit-claim deed to 180 Talmadge, Inc., a New Jersey corporation, who conveyed it to Talmadge, Inc., a Missouri corporation.

A confirmation hearing was scheduled for January 18, 1996, pursuant to § 141.580, RSMo 1994, which requires that the court, on its own motion or on the motion of any interested party, set the cause for hearing to confirm any sale of real estate made by the sheriff. At the confirmation hearing, the sheriff makes a report of the sale, and the court hears evidence of the value of the property offered on behalf of "any interested party to the suit." The court then determines whether adequate consideration has been paid for each parcel. Section 141.580.1. The confirmation hearing in this case was held on February 15, 1996. At the hearing, there were appearances by Jackson County, 180 Talmadge Co., T.C. Services, Inc., and Eugene Beck. Mr. Beck was not a formal party, and did not seek to intervene as a party. The issue raised at the hearing was whether the sale should be affirmed, or whether the sale should be set aside because, at the time of the sale, Transcon Lines was a debtor in bankruptcy in an involuntary bankruptcy case. The court expressed doubt as to Mr. Beck's standing to participate in the hearing, but did not rule on it. Mr. Beck informed the court he was ready, willing and

---

1. The Land Trust is a creature of statute. Section 141.700, RSMo 1994, states:

There is hereby created a commission for the management, sale and other disposition of tax delinquent lands, which commission shall be known as "The Land Trust of .... County, Missouri", and the members thereof shall be known as land trustees. Such land trust shall have and exercise all the powers that are con-

ferred by sections 141.210 to 141.810 necessary and incidental to the effective management, sale or other disposition of real estate acquired under and by virtue of the foreclosure of the lien for delinquent real estate taxes, as provided in said sections, and in exercise of such powers, the land trust shall be deemed to be a public corporation acting in a governmental capacity.

able to purchase the land and brought a check for the amount of the back taxes with him. Counsel explained that Mr. Beck did not participate in the bidding at the public sale because he felt it was safer (from a title standpoint) to buy the property from the Land Trust. Mr. Beck also filed pleadings with the trial court urging the court to affirm the sale.

Both Transcon and 180 Talmadge claimed that the sale was void due to the automatic stay provisions of the bankruptcy code. After considering the briefs filed, the trial court agreed, and entered judgment setting aside the Court Administrator's sale, finding that it "was the result of irregularity[,] accident or mistake as set out in the motions to disaffirm and set aside."

Mr. Beck now attempts to appeal this ruling. Mr. Beck wishes to purchase the property by paying the outstanding taxes. Mr. Beck did not bid on the property at the Court Administrator's sale. Nor does he have any legal or equitable claim to the property. He is a stranger to the property, except for the fact that he desires to purchase the property from the Land Trust at a price he considers favorable. A joint motion to dismiss was filed by respondents based upon Mr. Beck's lack of standing in these proceedings. That motion is granted and the appeal dismissed.

■ Section 141.590, RSMo 1994, provides that, "[t]he collector or any interested person ... may appeal from the judgment confirming or disapproving the sheriff's sale." Mr. Beck maintains that since he wishes to purchase the property he is an "interested person" under § 141.590. The statute does not define the term "interested person." Nor are there any cases directly addressing the meaning of the term in this statute. Mr. Beck claims that the fact that he received a notice of the confirmation hearing from the Collections Department is affirmative proof of such an interest since the form contains the sentence, "Our records indicated that you have an equitable or a legal interest in the real estate property attached." Mr. Beck does not deny, however, that the reason he received a notice of the hearing is that he requested that the Department of Collections

send him one. It is a standard notice of the type sent to persons claiming some ownership interest in the property. The affidavit of Vicki Fitzgerald, the Assistant Director of Collections, attached to the motion to dismiss, states that the notice was sent to Mr. Beck "only after he had made request for such notice." Ms. Fitzgerald explains in the affidavit that "[t]he notice sent to Appellant is a standard form and is used to provide notice to anyone who has requested notice of a confirmation hearing on a particular property sold to Land Trust." She also states that the Collections Department does not have any knowledge or information of any equitable or legal interest that Mr. Beck might have in the property. We conclude that the fact that Mr. Beck received notice of the hearing is immaterial. The notice confers no special status on Mr. Beck; he is not an "interested person" by reason of requesting and receiving the notice in question.

■ Our next inquiry is whether Mr. Beck's expressed desire to purchase the Gardner Property confers upon him the status of "interested person." We note that at the confirmation hearing, "any interested party to the suit" may present evidence related to the value of the property. "[T]he suit" is a reference to the suit for foreclosure of the tax lien described in § 141.400 RSMo 1994. Mr. Beck would not have had the right to present valuation evidence at the confirmation hearing, because he was not an "interested party to the suit." Section 141.590, which deals with appeals from a confirmation or disapproval of a sale, was amended in 1949 to provide that "any interested person" could appeal, whereas the statute previously specified only that "any party" could appeal. We are uncertain as to the intention of the legislature in the use of the term "any interested person" in § 141.590, but we believe it is extremely unlikely that it was intended to give the right of appeal to someone who has no historical relationship to the legal or equitable ownership of the property, and who merely wishes to see the sale confirmed in order to have an opportunity to purchase the property from the Land Trust. We note that the legislature could have easily stated that "any person" could appeal from

the trial court ruling, because any person going to the trouble of appealing obviously would have an "interest," but only in the non-legal sense of the word "interest." To construe § 141.590 as Beck desires would allow anyone at all to appeal.

It is extremely unlikely that that is what was intended by the "interested person" language in § 141.590. We believe that the phrase used in § 141.590, "interested person," implies a closer relationship to the action than that enjoyed by any member of the general public entertaining the notion of purchasing the property. We believe that because of § 512.020 RSMo 1994, the phrase implies that a person must have some stake, claim, or historical connection with the property such that the person been "aggrieved" by the action in the trial court. *See Hertz Corp. v. State Tax Comm'n,* 528 S.W.2d 952, 954 (Mo. Banc 1975). Section 512.020 provides that a party who has been "aggrieved" has a right to appeal from a judgment of the trial court. An "aggrieved" party is one whose pecuniary or property rights or interests are directly affected by the judgment. *Davis v. Allen,* 740 S.W.2d 699, 700 (Mo.App. 1987). There must be some immediate consequence and not the mere possibility of some remote repercussions. *Hertz,* 528 S.W.2d at 954. "Interest" is "[t]he most general term that can be employed to denote a right, claim, title, or legal share in something." BLACK'S LAW DICTIONARY 812 (6th ed.1990). Mr. Beck does not have any colorable right, claim, title or legal share in the property in question.

This case is not like *In re Foreclosure of Liens for Delinquent Land Taxes Big Action in Rem,* 672 S.W.2d 730 (Mo.App. 1984), in which the court considered the argument of a purchaser at a foreclosure sale that the former owner could not be allowed to intervene because he lost all interest in the land at the time of the sale. The court rejected this reasoning and held that although the former owner had no interest in the land itself, he did have an interest in the proceeds. *Id.* at 731; *see also City of St. Louis, Collector of Revenue v. Parcel 107 of Land,* 702 S.W.2d 123, 125 (Mo.App.1985). In this case, Mr. Beck has neither an interest

in the land nor an interest in the proceeds. He was not recognized as an intervenor in the circuit court proceedings, although he filed various suggestions and memorandum, and appeared at the confirmation hearing. "Standing to sue is an interest in the subject matter of the suit, which, if valid, gives that person a right to relief." *State ex rel. Twenty–Second Judicial Circuit v. Jones,* 823 S.W.2d 471, 475 (Mo. banc 1992). The concept of standing is related to that of subject matter jurisdiction; it may be raised at any time. *State ex rel. Mathewson v. Board of Election Comm'rs of St. Louis County,* 841 S.W.2d 633, 634 (Mo. banc 1992). This court has the power to entertain the issue of standing, because lack of standing cannot be waived. *Pace Constr. Co. v. Missouri Highway & Transp. Comm'n,* 759 S.W.2d 272, 274 (Mo.App.1988).

Under the foregoing analysis, we see no reason that even if Mr. Beck had been a failed bidder, he would have had standing to appeal. Nevertheless, Mr. Beck is not even a failed bidder—he is simply someone who desires to purchase the property on particular terms. We conclude that he lacks standing to appeal the trial court's judgment setting aside the sale. Accordingly, we order that the appeal be dismissed.

Appeal dismissed.

ULRICH, C.J., P.J., and BERREY, J., concur.