Nancy FARMER, Missouri State
Treasurer, Appellant,

v.

Honorable Byron L. KINDER and
Honorable Thomas J. Brown,
III, et al., Respondents.

No. SC 84328.

Supreme Court of Missouri,
En Banc.

Nov. 26, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. McAdams, Asst. Atty. Gen., Jefferson City, for Appellant.

Robert G. Russell, Sedalia, Dale C. Doerhoff, G. Alex Bartlett, Jefferson City, for Respondents.

Richard A. Ahrens, St. Louis, (Utility Consumers Council of MO, Inc.), David J. Epstein, Boston, Robert P. Krenkowitz, Tucson, (National Ass. of Unclaimed Property Administrators), for Amicus Curiae.

PER CURIAM.

Nancy Farmer, state treasurer, appeals the trial court's holding that it lacked subject matter jurisdiction of her suit (1) against respondents the Honorable Byron L. Kinder and the Honorable Thomas J. Brown, III both of whom are circuit judges of Cole County and (2) against respondent receivers Julie Smith, Jackie Blackwell, Sharon Morgan, and Elaine Healey, who administer four funds held in the Cole County Circuit Court's registry.[1]

The treasurer claims that the funds are "state funds" that qualify as "unclaimed property" that the judges and the receivers were required to pay over to the treasurer under sections 447.539 and 447.543, RSMo 2000, respectively, part of the Uniform Disposition of Unclaimed Property Act[2] (hereinafter UDUPA). She further contends that upon their failure to do so, section 447.575 gave her the right to enforce delivery of—that is, to collect—the funds.[3] She sought a mandatory injunc-

---

1. Judges Kinder and Brown recused themselves from this case, and this Court appointed Judge Ward B. Stuckey. As discussed herein, Elaine Healey was later appointed trustee over the funds at issue in SC84211.

2. Secs. 447.500–447.595, RSMo 2000. All statutory references are to RSMo 2000 unless otherwise indicated.

3. These funds are the same as those at issue in *In re Ancillary Adversary Proceeding Questions,* 89 S.W.3d 460 (Mo. banc 2002), and in *State ex inf. Nixon v. Kinder and Brown,* 89 S.W.3d 454 (Mo. banc 2002) also decided this date.

tion ordering respondents to deliver to her all the monies in the funds as of the date the funds were presumed abandoned pursuant to 447.532; interest, dividends, or other earnings from that date to the present, less any necessary costs and payments made to claimants; as well as penalties, pursuant to 447.577, for respondents' alleged failure to timely report and deliver the funds.

Respondents countered that the funds are not state funds and are not subject to UDUPA because they are the subject of pending litigation, that UDUPA's reporting and delivery provisions do not apply to funds held by a court, and further that if they did, then this aspect of UDUPA would be unconstitutional under article II, section 1 of Missouri's Constitution, as the judiciary is part of a separate branch of government that cannot constitutionally be made to report to and be supervised by an elected official of the executive branch, such as the treasurer.

The trial court held that the treasurer had no standing to bring suit to collect these funds and that the trial court, therefore, lacked subject matter jurisdiction over the suit. This Court agrees. Assuming for present purposes only that UDUPA could apply to funds such as those at issue here, an issue not reached, article IV, section 15 of the Missouri Constitution does not permit the treasurer to collect or enforce delivery of these or other funds. Rather, it explicitly limits the treasurer's authority to "the receipt, investment, custody and disbursement of state funds and funds received from the United States government." Mo. CONST. art. IV, sec. 15. To the extent that section 447.575 purports

to give the state treasurer authority to go beyond these powers allowed the treasurer in the constitution by authorizing her to collect unclaimed property, that section is void as an unconstitutional delegation of authority to the state treasurer in violation of the specific limitations placed on her authority by article IV, section 15 of the state constitution.

## STANDARD OF REVIEW

■ This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Constitutional interpretation is an issue of law that this Court reviews *de novo*.

## THE FOUR FUNDS

**Fund I: SC84210.** This fund was created after this Court held in *State ex rel. Utility Consumers' Council of Missouri, Inc. v. Public Service Commission*, 585 S.W.2d 41 (Mo. banc 1979), that the Public Service Commission (PSC) was without authority to permit certain utility companies to impose a specific type of fuel cost surcharge and remanded for "a determination by [the circuit court] of the amounts due as a result of the surcharge and to whom, and the proper method of restitution." *Id.* at 60.[4] In compliance with the circuit court's order on remand, the utilities made refunds to most of the customers who had previously paid the surcharge. But, some of these customers could not be immediately identified or located. The utilities,

---

**4.** That appeal actually involved two underlying cases, *State ex rel. Utility Consumers Council of Missouri, Inc., v. Public Service* Commission of Missouri, et al., *28594 and* State ex rel. Barvick v. Public Service Commission of Missouri, et al., *28604.*

therefore, paid over the funds they believed due to the latter customers into the registry of the court. Because it might take some time to distribute the funds to all identifiable claimants and because the funds needed to be held and administered during that period, the court set up a receivership. It appointed Julie Smith as receiver pursuant to Rule 68.02, directed her to hold and administer the funds "so that refunds may be made therefrom to utility customers," and authorized her to apply the interest on the funds in the manner provided by section 483.310(2).[5]

**Fund II: SC84211.** This fund was created after Old Security Life Insurance Company was placed into receivership by order of the Circuit Court of Cole County. These proceedings were so successful that a substantial balance remained even after the payment of all claims against the company and the payment of the expenses of the receivership. Accordingly, a class action adversary proceeding was thereafter filed within the receivership case to determine the disposition of the excess funds.[6] The parties eventually reached a settlement providing that a portion of the settlement proceeds were to be set aside as a reserve for additional claims and expenses of the insurance receivership. Class attor-

neys and the receiver were largely successful in making disbursements from this reserve, but some checks to class members were either returned or not cashed, and some checks were never issued because the recipients could not be located. Accordingly, the circuit court created a receivership,[7] appointed Elaine Healey as receiver under Rule 68.02, and directed her to hold the funds that remained undistributed "for the benefit of such class members" and apply the interest as permitted in section 483.310(2).

In 1991, with the agreement of class counsel, the circuit court entered an "Order Establishing Trust for Undistributed Class Actions Proceeds." This effectively transferred the fund to "Elaine Healey in trust" for the benefit of the class members, according to the same terms as in the receivership. The purpose of the transfer was so that the fund would remain available so that the intent of the settlement agreement would continue to be satisfied as claimants stepped forward.

**Fund III: SC84212.** This fund was created after Southwestern Bell and the Office of Public Counsel, in a consolidated case, petitioned for review and for stay of a decision of the PSC that required Southwestern Bell to implement lower rates.[8]

---

5. Although the treasurer spends much of her brief discussing what authority the receivers and trustee would have had if they had been directed to invest interest in their capacity as circuit clerks under section 483.310(1), the circuit court's orders as to this and the other three funds clearly direct the receivers to take custody of the funds in their capacity as receivers appointed pursuant to Rule 68.02 and gives them authority to invest and expend the interest for the purposes set out in section 483.310(2), but subject to the supervisory authority of the circuit court. The treasurer's arguments as to what authority a circuit clerk who was not appointed receiver might have are, thus, irrelevant.

6. The case was docketed as *Jerry B. Buxton, Director of the Division of Insurance v. Old Security Life Insurance Company,* 29686. The class action was styled *Buxton v. Old Security Life Insurance Company, Adversary Proceeding, Crist v. ISC Financial Company and the Kansas Life & Health Insurance Guaranty Association,* 29686.

7. This receivership was created by court order and was styled: *In re Old Security Life Insurance Company, et al.,* CV186–1282CC.

8. The consolidated case was captioned: *State of Missouri, ex rel. Southwestern Bell Telephone Company v. The Public Service Commission of Missouri,* CV189–808CC, and *State of Missouri, ex rel., Office of the Public Counsel*

The circuit court entered a stay and ordered Southwestern Bell to pay into the registry of the court that portion of telephone charges collected that would be in excess of rates that would have been collected but for the stay. Because it might take some time to distribute the funds to all identifiable claimants and because the fund needed to be held and administered during that period, the court appointed Jackie Blackwell as receiver under Rule 68.02 to administer the fund, to make refunds therefrom to customers, and to apply the interest on the funds as provided in section 483.310(2).

**Fund IV: SC84213.** This fund also arose out of a telephone rate dispute. It was created after Southwestern Bell petitioned for review and for stay of a decision of the PSC that required Southwestern Bell to implement lower rates.[9] The circuit court granted Southwestern Bell a temporary restraining order, prohibiting the implementation of rate reductions as ordered by the PSC but directing Southwestern Bell to pay into the registry of the court all monies collected from customers in excess of the rates set by the PSC. The circuit court eventually dismissed Southwestern Bell's petition with prejudice and entered an order approving distribution of the funds collected after the stay. Because some customers with claims to portions of the fund could not be located, those funds were paid into the registry of the court, and the court appointed a receiver, Sharon Morgan, pursuant to Rule 68.02. The receiver was similarly authorized to apply the interest on the funds in the manner permitted by section 483.310(2).

v. Missouri Public Service Commission, CV189–809CC.

## STANDING AND LACK OF SUBJECT MATTER JURISDICTION

The treasurer says that the receivers had no authority to continue to hold the funds or to apply the interest pursuant to the court's orders under Rule 68.02 and section 483.310(2), and, instead, should have paid the money over to her and should have issued reports about the funds to her. Before we can address the merits of these claims, however, we must determine whether the treasurer has standing to make them.

Standing is a jurisdictional matter antecedent to the right to relief. *State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 227, n. 6 (Mo. banc 1982). It asks whether the persons seeking relief have a right to do so. *State ex rel. Twenty-Second Judicial Circuit v. Jones,* 823 S.W.2d 471, 475 (Mo. banc 1992). Where, as here, a question is raised about a party's standing, courts have a duty to determine the question of their jurisdiction before reaching substantive issues, for if a party lacks standing, the court must dismiss the case because it does not have jurisdiction of the substantive issues presented. *State ex rel. Ryan v. Carnahan,* 960 S.W.2d 549, 550 (Mo.App.1998); Rule 55.27(g)(3). Lack of standing cannot be waived. *Foreclosure for Delinquent Land Taxes by Action in REM,* 947 S.W.2d 90, 93 (Mo.App.1997).

Here, the treasurer maintains that section 447.575 gives her standing to bring suit to enforce delivery of the funds at issue. Prior to 1993, section 447.575 allowed the director of the department of economic development to enforce delivery of certain types of unclaimed property. Sec. 447.575, RSMo 1986. In 1993, the

9. The case was styled *State of Missouri ex rel. Southwestern Bell Telephone Company v. The Missouri Public Service Commission,* CV194–24CC.

legislature amended section 447.575 and transferred this power to the treasurer. That section, as revised, states:

447.575. Enforcing delivery, court action

If any person refuses to deliver property to the state as required under sections 447.500 to 447.595, the treasurer shall bring an action in a court of appropriate jurisdiction to enforce such delivery.

Respondents contend that, while section 447.575 clearly purports to give the treasurer standing to sue to enforce delivery of funds subject to UDUPA, article IV, section 15 of the state constitution prohibits her from exercising the collection power that section 447.575 purports to give her. Article IV, section 15 states in relevant part: "[n]o duty shall be imposed on the state treasurer by law which is not related to the receipt, investment, custody and disbursement of state funds and funds received from the United States government." Mo. CONST. art. IV, sec. 15.[10] Thus, whether the treasurer has standing to bring suit against respondents depends on whether section 447.575 is a constitutional delegation of authority under article IV, section 15.

■■ An act of the legislature carries a strong presumption of constitutionality. *Home Builders Ass'n of Greater St. Louis v. State*, 75 S.W.3d 267, 269 (Mo. banc 2002). This Court will not invalidate a statute unless it clearly and undoubtedly contravenes the constitution and plainly and palpably affronts fundamental law embodied in the constitution. *Smith v. Coffey*, 37 S.W.3d 797, 800 (Mo. banc 2001). But, if all or part of a statute does conflict with a constitutional provision or provisions, this Court must hold the conflicting

portions invalid. *State ex rel. Upchurch v. Blunt*, 810 S.W.2d 515, 516 (Mo. banc 1991).

As noted, the relevant portion of article IV, section 15 states, "[n]o duty shall be imposed on the state treasurer by law which is not related to the receipt, investment, custody and disbursement of state funds and funds received from the United States government." Mo. CONST. art. IV, sec. 15. On its face, the section does not give the treasurer the authority to collect or enforce delivery of any funds, but rather restricts her to receipt, investment, custody and disbursement of certain types of funds. But, the treasurer contends this section must be read broadly for the rules of constitutional construction allow for an even broader reading of the provision than is permitted in the case of statutory construction, due to the more permanent character of the constitution. *See Boone County Court v. State*, 631 S.W.2d 321, 324 (Mo. banc 1982). Therefore, the treasurer argues, when read broadly, "[t]he act of receiving or collecting abandoned property . . . is surely 'related to the receipt, investment, custody and disbursement of state funds.'" This Court disagrees.

■■■ While a court will read a constitutional provision broadly, it cannot ascribe to it a meaning that is contrary to that clearly intended by the drafters. Rather, a court must undertake to ascribe to the words of a constitutional provision the meaning that the people understood them to have when the provision was adopted. *Boone County Court*, 631 S.W.2d at 324. The meaning conveyed to the voters is presumptively the ordinary and usual meaning given the words of the provision. *Id.*

---

**10.** As written in 1945 this section referred only to state funds, but in 1986 was expanded to allow the treasurer to also receive funds from the United States Government. *See* Mo. CONST art. IV, sec. 15 (1986).

■ Applying this rule, this Court finds that article IV, section 15 does not expressly or implicitly grant the treasurer authority to enforce delivery of property but, to the contrary, specifically denies her that power. The treasurer would have us construe section 15 as if it were a broad grant of power to undertake actions not limited to those related to receipt, investment, custody and disbursement of state funds and funds received from the United States government. But, the words used to describe the treasurer's powers do not broaden or expand the treasurer's authority, but rather are words of restriction. The constitution enumerates very specific powers that the treasurer may exercise and, then, specifically provides that *no* duty not related to those specifically enumerated powers may be exercised by her.

The failure to enumerate the power to collect or enforce delivery of funds was not an oversight. In fact, section 15 itself provides that "[a]ll revenue *collected* and moneys received *by the state* which are state funds or funds received from the United States government shall go promptly into the state treasury . . . [i]mmediately *upon receipt* of state or United States funds *the state treasurer* shall deposit all moneys in the state treasury in banking institutions selected by him and approved by the governor and state auditor, and he shall hold them for the benefit of the respective funds *to which they belong* and disburse them as provided by law." Mo. CONST. art. IV sec. 15 (emphasis added). Similarly, article IV section 22 states "[t]he department [of revenue] shall collect all taxes and fees payable to the state as provided by law." Mo. CONST. art. IV sec. 22.

The contrast is evident. In section 15 the drafters chose not to permit the treasurer to act as a collector of these or other funds, but rather specifically provided that

the treasurer is to act as *"custodian* of all state funds and funds received from the United States government." Mo. CONST. art. IV sec. 15 (emphasis added). The word "custodian" is defined as one that guards and protects or maintains. Webster's New Collegiate Dictionary 280 (1976). In other words, a custodian receives and holds funds; it does not collect them.

The narrow grant of authority to the treasurer is in keeping with the narrow grant of authority by the 1945 constitution to certain other elected officials. Just as article IV, section 15 sets limits on the power of the treasurer, so article IV, section 13 provides: "[n]o duty shall be imposed on [the state auditor] by law which is not related to the supervising and auditing of the receipt and expenditure of public funds." Article IV, section 14 similarly provides "no duty shall be imposed on [the secretary of state] by law which is not related to his duties as prescribed in this constitution." There were no similar limitations in the 1875 Constitution, and this Court has previously recognized that it was to correct this situation that these limiting provisions were added to the 1945 constitution, for:

the background of the 1945 provision lies in the prior history of a building up of the power and patronage of elected officials by giving to them new functions and duties. One purpose of the new constitution was to limit and define the scope and duties of all executive officials (see § 12, Art. 4,) agencies, and departments, including elected officials.

*Petition of Board of Public Buildings,* 363 S.W.2d 598, 608 (Mo. banc 1962).

Indeed, the 1944 debates over the 1945 constitution themselves show that the delegates to the constitutional convention drafted it with an eye towards their concern that power had been too widely dis-

tributed among a variety of elected officials under the 1875 constitution and that a focusing of more executive power in the office of the governor and his or her appointees might lead to more effective government. One way the 1945 constitution sought to accomplish this goal was by precluding the expansion of the state treasurer's role beyond that of custodian of state funds and by similarly limiting the power of the state auditor and secretary of state. *See* DEBATES, MISSOURI CONSTITUTIONAL CONVENTION 1945, vol. 13, 4127–4135; vol. 14, 4171–4173. In addition to imposing specific prohibitions on the office of state treasurer, the 1945 constitution effectively transferred to other officials any powers of collection that the legislature had previously permitted the treasurer to exercise.

## CONCLUSION

For these reasons, this Court concludes that article IV, section 15 restricts rather than expands the role of the state treasurer by limiting her to powers and duties related to those specifically enumerated in article IV, section 15 of the state constitution, and no others. To read article IV, section 15 as nonetheless granting the treasurer authority to enforce the delivery of property would be inconsistent with the section's plain language.

The treasurer bases her right to bring suit to enforce delivery entirely on section 447.575's purported grant of authority to her to enforce delivery of funds pursuant to UDUPA. That provision constitutes an unconstitutional delegation of power to the treasurer to collect property, in violation of

the specific limitations on her authority set out in article IV, section 15 of Missouri's constitution [11] and, so, provides her with no authority to enforce delivery of unclaimed property. She, therefore, lacked standing to bring this suit against respondents to enforce delivery of the funds at issue to the unclaimed property fund.[12] For these reasons, the trial court's judgment is affirmed.

LIMBAUGH, C.J., WHITE, BENTON and LAURA DENVIR STITH, JJ., and SMITH, HOWARD and BRECKENRIDGE, Sp. JJ., concur.

WOLFF, PRICE and TEITELMAN, JJ., not participating.

---

11. The effect of invalidating an amendment to a statute is to reinstate the previously effective provision of that statute. *See State ex rel. SSM Health Care St. Louis v. Neill*, 78 S.W.3d 140, 142–43 (Mo. banc 2002).

12. The treasurer contends that the trial court erred procedurally in the dismissal of her suit

at the particular juncture it did so. Because subject matter jurisdiction is lacking, and because a court may determine its own subject matter jurisdiction at any time, the treasurer's argument is moot. *See* Rule 55.27(g)(3).