02-12-069-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00069-CV

 

 


 
 
 Stephen
 Avdeef
  
  
 v.
  
  
 RBS
 Citizens, N.A.
 
 
 §
  
 §
  
 §
  
 §
  
  
 
 
 From the 141st District
 Court
  
 of
 Tarrant County (141-249241-10)
  
 December
 21, 2012
  
 Per
 Curiam
 
 


 

JUDGMENT

 

This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

          It
is further ordered that Appellant Stephen Avdeef shall pay all of the costs of
this appeal, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS

 

 

PER
CURIAM

 

 

 








 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-12-00069-CV

 

 


 
 
 Stephen Avdeef
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 RBS Citizens, N.A.
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 141st
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellant
Stephen Avdeef appeals the trial court’s summary judgment in favor of Appellee
RBS Citizens, N.A.  He argues that RBS did not have standing to sue and that
the trial court erred by granting summary judgment and denying his motion for
reconsideration because RBS violated the federal Fair Debt Collection Practices
Act (FDCPA).  Because we hold that the trial court did not err by granting
summary judgment for RBS and that the statute Avdeef relies upon did not
deprive RBS of standing, we affirm.

On
November 8, 2010, RBS as successor in interest to Citizen’s Automobile Finance,
Inc. filed suit against Avdeef and his son Toby Avdeef to recover $10,578.41
due under a motor vehicle sales contract, the vehicle, and $1,500.00 in
attorney’s fees.

Toby
did not answer.  Avdeef filed an answer containing a general denial, asking the
court to dismiss RBS’s claims, and asserting as affirmative defenses that RBS
had not mailed him a demand letter prior to filing suit as required by the FDCPA
and that RBS had violated the FDCPA by failing to attempt negotiations or
mediation.

RBS
filed a combined motion for summary judgment against Avdeef and motion for
default judgment against Toby.  The motion did not specify whether RBS was
seeking traditional or no-evidence summary judgment, but it asserted that the
evidence conclusively established that Avdeef and Toby entered into the sales
contract and then defaulted on their payments; that the account had been
accelerated; and that RBS was entitled to possession of the vehicle, liquidated
damages, and attorney’s fees.  With respect to Toby, RBS asserted that Toby had
not appeared and that it was entitled to default judgment against him.

RBS
attached to its motion a copy of the motor vehicle sales contract listing
Avdeef and Toby as co-buyers and West Loop Dodge, Inc. as the seller.  The
contract provided that the buyers were in default if they failed to pay any
amount when it was due; that if they defaulted, the seller could demand payment
in full and could repossess the vehicle; and that if the seller had to hire an
attorney to enforce the contract, then the buyers would pay reasonable
attorney’s fees.  The bottom of the first page of the form contract includes a
space for the seller to indicate if the contract has been assigned, and in that
space West Loop stated that it had assigned its interest to Citizens.

RBS
also attached to its motion printouts from a “recovery management system”
containing information about Avdeef’s account.  RBS’s custodian of records
stated in a business records affidavit that these records showed Avdeef’s
payment history and were kept in the regular course of business.  The records
showed regular monthly payments to RBS beginning in August 2006 and continuing,
with some late payments, for several years.  The records showed that the June
2010 payment was not made and that the last payment on the account had been in
July 2010, at which time $10,062.01 was owed on the note.  RBS charged off the
account in September 2010, and after adding interest and costs, showed an
account balance of $10,527.78 still owed.

Avdeef
filed a response to RBS’s motion but did not dispute RBS’s factual assertions concerning
the execution of the contract or the alleged default, nor did he file controverting
evidence relating to the sales contract or to the fact that the contract was in
default.  Instead, Avdeef argued that RBS had failed to notify him in writing
that the debt had been accelerated, in violation of the federal FDCPA. 
Finally, under a section titled “[RBS] Had No Standing To Sue Under A Contract,”
Avdeef argued that RBS’s counsel had falsely claimed that the matter did not
fall under the FDCPA.  He did not make any argument in that section or any
other part of his response about why RBS did not have standing.

Avdeef
then filed a motion to dismiss with prejudice, asserting that RBS had no
standing to sue because it had not notified him in writing that the debt had
been accelerated in violation of federal statute.  He also contended that RBS
had concealed facts from the trial court by falsely claiming that the matter
did not fall under the federal FDCPA.

The
trial court granted summary judgment against Avdeef and default judgment
against Toby, awarding RBS $10,578.41 plus interest, possession of the vehicle
(the proceeds of which were to be applied as credit against the damages
awarded), and attorney’s fees of $3,000.  Avdeef filed a motion for
reconsideration, which the trial court denied.  Avdeef then filed this appeal.

STANDARDS
OF REVIEW

Standing

We
review de novo a trial court’s determination on the question of standing.[2]
 In our review, we construe the pleadings liberally in the plaintiff’s favor.[3]
 We may consider evidence presented to the trial court when necessary to
resolve the jurisdictional issues raised.[4]

Summary
Judgment

We
review a summary judgment de novo.[5]  We consider the evidence
presented in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could and disregarding evidence
contrary to the nonmovant unless reasonable jurors could not.[6] 
We indulge every reasonable inference and resolve any doubts in the nonmovant’s
favor.[7]  A plaintiff is entitled
to summary judgment on a cause of action if it conclusively proves all
essential elements of the claim.[8]

ANALYSIS

In
his first issue, Avdeef argues that the trial court erred by granting summary
judgment for RBS because RBS had no standing to sue.  Avdeef does not cite to any
case or Texas statute in his argument under this section.  He does not discuss
what gives a plaintiff standing, and although he states that RBS did not notify
him in writing that the debt had been accelerated or that it was demanding
return of the vehicle, he does not explain how this deprives RBS of standing. 
The entirety of his argument under this section is as follows:

The issues presented here are
excruciatingly simple and should have never been allowed to progress to the
point of having to argue this matter before the Tarrant County Second Court of
Appeals.  This entire matter should have been promptly dismissed once it was
made known to the trial court that [RBS] had NO STANDING TO SUE.  The sheer
fact that this matter was not dismissed by the trial court once the facts were
known in open court as reflected by the court’s record of January 19, 2012 and
the facts contained in [Appellant’s] Motion to Dismiss With Prejudice filed on
January 13[,] 2012, and which was filed with the court in a timely manner, it
was requested in writing to the court that the Motion to Dismiss and Motion to
Compel be heard by the court in conjunction with the January 19, 2012 Motion
For Summary Judgment Hearing.

[RBS] made NO EFFORT to notify
[Avdeef] IN WRITING that the debt had been accelerated, or that they were
formally demanding return of the collateral other than improperly filing civil
litigation in direct violation of Federal statute.

Pursuant to 15 USC 1692g, §809.(d), Validation of debts:

“A communication in the form of a
formal pleading in a civil action shall not be treated as an initial
communication for purposes of subsection (a).”

The Federal Statute clearly overrides
state law and clearly states that it was WHOLLY IMPROPER for [RBS] to file the
original civil action[.] [Record citations omitted.]

Additionally,
at the conclusion of the argument section of his second issue, Avdeef cites to Farmer
v. Kinder,[9] a Missouri case, to argue
that courts have a duty to determine if a party has standing.[10] 
Although Avdeef cites no Texas cases in his brief, Texas law provides that a
trial court must determine that a plaintiff has standing.[11]

We
construe Avdeef’s brief to argue that RBS was deprived of standing to bring
this suit by its failure to inform Avdeef that it was accelerating the debt and
seeking return of the vehicle.  We cannot agree, however, that the statute on
which Avdeef relies deprived RBS of standing to pursue its claim to recover
money owed under the sales contract.

Avdeef’s
argument is based on 15 U.S.C. § 1692g, a section of the federal FDCPA.[12] 
That section provides that a debt collector must provide notice to a consumer
in connection with the collection of a debt.[13]  This validation notice
must contain certain information, and it must be provided to the consumer
within five days after a debt collector’s initial communication with a consumer
regarding collection of the debt.[14]  The statute expressly
provides, however, that for purposes of that section, a pleading in a civil
action does not constitute an “initial communication.”[15] 
Thus, RBS’s filing suit against Avdeef did not by itself trigger any obligation
to comply with the validation notice provision.

Furthermore,
nothing in the FDCPA suggests that § 1692g is a statutory prerequisite to filing
suit to recover a debt or that a debt collector who fails to comply with this
statute would not have standing to sue on the debt.  But even
if we were to read this section (as Avdeef does) as a statutory prerequisite to
filing suit, this section does not apply to RBS.

The
loan was assigned to RBS well before it went into default.  Under the FDCPA,
RBS is a creditor, not a debt collector.[16]  Accordingly, § 1692g
would not require RBS to provide the notice that Avdeef claims that he never
received.

Avdeef
argues in his reply brief that the FDCPA does require that the validation notice
be given before legal action can be taken.  But the section he relies on does
not support his claim.  He points out that § 1692g(d) provides, “A
communication in the form of a formal pleading in a civil action shall not be
treated as an initial communication for purposes of subsection (a) of this
section.”[17]  Avdeef misunderstands
the language of this section.  As stated, the section provides that a validation
notice providing information about the debt must be sent to a consumer within
five days after “an initial communication” concerning the collection of a debt.[18] 
But then § 1692g(d) states that filing suit against the consumer does not count
as “an initial communication.”  In other words, filing suit against a consumer,
as opposed to engaging in other collection activities, does not trigger the
requirement of providing the validation notice.

In
his reply brief Avdeef also argues, with no supporting authority cited, that
because RBS used outside counsel to collect its own debt, it was a debt
collector under federal law.  An attorney may, by course of conduct, bring
himself within the definition of “debt collector” under the FDCPA.[19]
 But the issue in this case is not whether RBS’s attorney constitutes a debt
collector but whether RBS is a debt collector and if so, whether that deprives
it of standing.  It is therefore irrelevant whether RBS’s attorney could meet
the definition of debt collector.  We overrule Avdeef’s first issue.

In
his second issue, Avdeef argues that the trial court erred by granting summary
judgment for RBS and by denying Avdeef’s motion for reconsideration because RBS
was in violation of the FDCPA.  Under this issue, Avdeef again argues that RBS
was barred from filing any civil action unless he was first given written
notice under the FDCPA.  We have already addressed this argument, and we
therefore overrule this part of Avdeef’s second issue.

Avdeef
then contends that RBS’s attorney falsely claimed that the matter does not fall
under the FDCPA.  He takes issue with the fact that RBS reported the debt to
credit agencies as a “charge off” and argues, with no citation to evidence in
the record, that RBS did this so that it

could file a Proof of Claim and Adversary Proceeding with
the bankruptcy court.  This would ensure that [RBS’s] claims to the “DEBT”
would be preserved on the federal level, and the contractual agreement would
not be written off by the court, thus rendering [RBS] a “DEBT COLLECTOR”, by
their own public admission to ALL THREE PUBLIC CREDIT BUREAUS.

In
the summary of his argument, he asserts that RBS did not show that it had the
legal authority to sue for a charged off debt once said debt had been publicly
reported.  He cites no authority for this proposition.  Neither the reporting
of the debt as charged off nor speculation about RBS’s future actions in a possible
bankruptcy proceeding made RBS a debt collector under the FDCPA when it filed
suit to recover on its own debt.[20]

Avdeef
then argues that the knowing failure to communicate to credit bureaus that a
debt is disputed is a violation of § 1692e(8) of the FDCPA.[21] 
That section, on its face, applies to debt collectors.  We have already held
that RBS is not a debt collector in this case.

Finally,
we briefly address Avdeef’s argument that the contract between Avdeef and RBS
did not state that RBS could demand full payment

AND the improper surrender of the collateral AFTER full
payment is made, as [RBS] is now improperly attempting to do through the courts
in direct violation of the written contract, and in direct violation of the
rule of law, since it clearly states that notice has to be given before a legal
action can be taken.

To
the extent that Avdeef challenges the sufficiency of the evidence that RBS
produced regarding the terms of the parties’ contract, he did not make any such
argument in the trial court, but he may raise for the first time on appeal a challenge
to the legal sufficiency of RBS’s summary judgment grounds.[22] 
But he did not raise this issue in his original brief, and we are not required
to consider issues raised for the first time in a reply brief.[23]

Furthermore,
as we mentioned above, the sales contract provided that upon default, the
seller may demand full payment and may recover the collateral.  And RBS was not
awarded double recovery—the trial court’s order specifically provided that the
amount realized from the sale of the vehicle must be deducted from the damages
award.  Avdeef makes no other argument about the sufficiency of RBS’s evidence
to prove that Avdeef defaulted on the contract or that he owed the amount that
RBS alleged.  Accordingly, we do not consider the sufficiency of RBS’s summary
judgment evidence and grounds.[24] 
We overrule Avdeef’s second issue.

Having
overruled both of Avdeef’s issues, we affirm the trial court’s judgment.

 

PER CURIAM

 

 

PANEL: 
DAUPHINOT, J.; LIVINGSTON,
C.J.; and GARDNER, J.

 

DELIVERED:  December 21,
2012









[1]See Tex. R. App. P. 47.4.





[2]Antonov v. Walters,
168 S.W.3d 901, 904 (Tex. App.—Fort Worth 2005, pet. denied).





[3]City of Argyle v.
Pierce, 258 S.W.3d 674, 680 (Tex. App.—Fort Worth 2008, pet. dism’d).





[4]Id.; see also
Bland ISD v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).





[5]Travelers Ins. Co. v.
Joachim, 315 S.W.3d 860, 862 (Tex. 2010).





[6]Mann Frankfort Stein
& Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).





[7]20801, Inc. v. Parker,
249 S.W.3d 392, 399 (Tex. 2008).





[8]See Tex. R. Civ. P.
166a(a), (c); MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).





[9]89 S.W.3d 447, 451 (Mo.
2002).





[10]Because this cite relates
to his first issue, we consider this argument in relation to his first issue
rather than his second.





[11]Bland ISD, 34
S.W.3d at 554 (“[A] court must not act without determining that it has
subject-matter jurisdiction to do so.”); Tex. Ass’n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 443–45 (Tex. 1993) (stating that standing is a
component of subject matter jurisdiction).





[12]15 U.S.C.A. § 1692g(a)
(West 2009).





[13]Id.





[14]Id.





[15]Id. § 1692g(d).





[16]See id. § 1692a(4)
(defining “creditor” as “any person who offers or extends credit creating a
debt or to whom a debt is owed, but such term does not include any person to
the extent that he receives an assignment or transfer of a debt in default
solely for the purpose of facilitating collection of such debt for another”); see
also id. § 1692a(6)(F) (excluding from the definition of debt
collector “any person collecting or attempting to collect any debt owed or due
or asserted to be owed or due another to the extent such activity . . .
concerns a debt obtained by such person as a secured party in a commercial
credit transaction involving the creditor.”).





[17]Id. § 1692g(d).





[18]Id. § 1692g(a).





[19]See, e.g., Heintz
v. Jenkins, 514 U.S. 291, 292, 115 S. Ct. 1489, 1489 (1995) (holding that
the term “debt collector” in the FDCPA applies to a lawyer who regularly tries
to collect consumer debts).





[20]The term “charged off”
generally means that the creditor considers the debt to be worthless and
uncollectable, that is, no longer an asset.  See, e.g., Van Veen v.
Equifax Info., 844 F. Supp. 2d 599, 603 (E.D. Pa. 2012) (noting that the
defendant reported the plaintiff’s account as charged off, “meaning [the
defendant] considered the debt uncollectable”); Glossary of Credit Terms,
Equifax.com,
https://help.equifax.com/app/answers/detail/a_id/398/~/glossary-of-credit-terms#CCharged
Off (defining “charged off” as an “[a]ccounting term to indicate the creditor
does not expect to collect a balance owing and chooses to transfer the account
to an accounting category such as ‘bad debt’ or ‘charged to loss’”).





[21]15 U.S.C.A. § 1692e(8) (West
2009).





[22]See City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).





[23]City of San Antonio v.
Schautteet, 706 S.W.2d 103, 104 (Tex. 1986) (providing that an issue raised
for the first time in a reply brief filed on appeal should not be considered by
the court of appeals).





[24]See Pat Baker Co., Inc.
v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998) (“It is axiomatic that an
appellate court cannot reverse a trial court’s judgment absent properly
assigned error.).