Mike **WEBER**, Paul Marquis,
and Cathy Armbruster,
Appellants,

v.

**ST. LOUIS COUNTY, IESI MO** Corporation, **Veolia Es Solid Waste** Midwest, LLC, and Allied Services, LLC, Respondents.

No. SC 91454.

Supreme Court of Missouri,
En Banc.

July 19, 2011.

E. Robert Schultz, III, Ronald J. Eisenberg of Schultz & Associates LLP, Chesterfield, for Weber, Marquis and Armbruster.

Patricia Redington, County Counselor, Clayton, for the County.

Edward Dowd, Jr., Robert F. Epperson, James E. Crowe, III, Dowd Bennett LLP, Clayton, for IESI Mo.

Brian E. McGovern, James A. Hajek, McCarthy Leonard & Kaemmerer LC, Chesterfield, for Veolia ES Solid Waste Midwest, LLC.

Scott J. Dickenson, John D. Ryan, Clayton E. Gillette, Lathrop & Gage LLP, St. Louis, for Allied Services.

WILLIAM RAY PRICE, JR., Chief Justice.

## I. Introduction

The appellants seek review of the trial court's dismissal of their challenge to St. Louis County's ("the County") creation and implementation of a waste management system for unincorporated St. Louis County. The County established eight trash collection areas, each served by trash haulers who submitted a winning bid. Appellants allege that the County violated section 2.180.24 of its charter, which states that a majority of voters must approve the "creation of districts in the unincorporated areas of the county" that are paid for by "funds raised by special assessment, general taxation, or service charge" within the district. Appellants also claim that the County violated section 260.247, RSMo Supp.2007, which requires cities that replace a private waste collection entity to give the entity two years notice of "its intent to provide solid waste collection services in the area by certified mail." The appellants claim these alleged violations deem the County's trash collection program void. In addition, the appellants argue that the respondents violated the Missouri Merchandising Practices Act (MPA).

The County did not violate its charter and the appellants do not have standing to file a claim under section 260.247. The appellants' claim under the MPA was derivative of their claims that the trash collection program was void, so it also fails. The trial court correctly dismissed the appellants' claims.

The judgment of the trial court is affirmed.

## II. Facts and Procedure

In December 2006, the County enacted ordinance 23,023, adding sections 607.1300 to 607.1310 to the county's revised ordinances, which established a new trash collection program in unincorporated St. Louis County. Specifically, the ordinance authorized the County to establish collection "areas" in unincorporated St. Louis

County "for the collection and transfer of waste and recovered materials."[1] It also allowed the county executive to "advertise for bids or proposals" to provide services "relating to collection and transfer of waste and recovered materials" in the designated collection areas. Contracts were to be awarded to the "most responsible bids or proposals," and the selected trash haulers would provide "exclusive services in the designated area or areas."

In 2008, the County executed contracts with waste collection businesses ("Haulers") to collect waste in eight collection areas.[2] No payments were made to the County or any political subdivision; county residents had independent contracts with the selected Haulers.

In November 2008, the County Council enacted ordinance 23,795, which prohibited trash haulers that were not selected in the bidding process from providing trash collection services within the eight designated collection areas. Violation of the ordinance would result in a maximum one-year incarceration and a maximum $1000 fine.

In September 2009, Paul Marquis and Cathy Armbruster filed a class action petition challenging the waste collection program. Both Marquis and Armbruster are taxpaying St. Louis County citizens who live in one of the eight waste collection areas. The amended petition added Mike Weber, who also lives in one of the collection areas. They alleged the challenged trash collection ordinances and scheme violated Missouri statute section 260.247 and Article 2, section 2.180.24 of the St. Louis County Charter. The trial court granted the defendants' motion to dismiss for failure to state a claim, with prejudice.

## III. Standard of Review

 The Supreme Court of Missouri reviews dismissals for failing to state a claim *de novo* without any deference to the circuit court decision. *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 724 (Mo. banc 2009). This Court "assumes that all of the plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom." *Id.*

## IV. Analysis

### a. The County did not violate its charter by establishing trash collection areas.

 In their first point, the appellants argue that the County violated Article II, section 2.180.24 of the St. Louis County Charter by not approving the trash collection areas through a vote. Section 2.180.24 states that the council shall have, by ordinance, the power to:

Provide for the creation of districts in the unincorporated areas of the county within which may be provided ... garbage and refuse collection and disposal ... and such kindred facilities as **the voters therein by a majority of those voting may approve,** the same to be paid for from funds raised by special assessment, general taxation or service charge, or any combination thereof within such districts ...

(Emphasis added).

The appellants argue that the eight trash collection areas are section 2.180.24

1. The appellants use the term "trash districts" in their brief, whereas the respondents use the term "collection areas." This Court uses the term "collection areas" because sections 607.1300 to 607.1310, which appellants attached to their pleadings, use the term "areas" rather than "districts."

2. IESI MO Corporation contracted to provide trash services to areas 1, 2, and 8; Veolia ES Solid Waste Midwest, LLC contracted to serve areas 3, 4, and 7; and Allied Services, LLC contracted to serve areas 5 and 6.

"districts," and that therefore there must be a vote to establish them. In support, the appellants note that the County referred to the collection areas as "districts" on its website and other county publications. The division of the County into geographic regions for trash collection purposes, however, does not by itself require voter approval. Section 2.180.24 is triggered when those areas pay for services using funds that have been raised by the County by means of "special assessment[s], general taxation or service charge[s], or any combination thereof" upon their residents.

Missouri does not require voter approval for the vast majority of government actions. Missouri does, however, have a long history of requiring voter approval before granting the government and political subdivisions the power to tax or levy fees on its citizens. *See* section 235.070, RSMo 1947 (requiring voter approval for establishment of street light maintenance districts with the taxing power); section 204.250, RSMo 1967 (requiring voter approval for establishment of common sewer districts); section 206.060, RSMo 1961 (requiring voter approval for the establishment of hospital districts with taxing power). For example, Missouri's Hancock Amendment prohibits counties and other political subdivisions from "levying any tax, license or fees . . . without the approval of the required majority of the qualified voters of that county or other political subdivision . . . ." Mo. Const. Art. X, section 22. Article II, section 2.180.24 of the County's charter is analogous to these laws requiring voter approval before a collective tax or charge by the government is assessed. The crucial component of these laws is an increase in the governmental entities' revenue, not the activity conducted by the governmental entity.

Here, county residents never pay the County for trash services. Although the County enforces the waste collection program with the threat of prosecution, the County's citizens have independent contracts with the trash collectors. In establishing the waste collection program, the County merely divided the unincorporated County into geographic areas in which haulers were designated to provide collection services and selected the haulers to provide services within these areas. Because the County does not collect any monies from its citizens for the trash collection services, Article II, section 2.180.24 does not apply.

In addition, the Missouri Constitution and other sections of the county charter grant the County the authority to engage in the trash collection business. Article VI, section 18(c) of the Missouri Constitution grants the County the authority to "exercise . . . legislative power pertaining to any and all services and functions of any municipality or political subdivision . . . in the part of the county outside incorporated cities." Article II, section 2.180.11 of the County's charter grants the council power to "collect and dispose of . . . garbage and refuse, or license and regulate such collection and disposal." In addition, Missouri courts recognize the County's ability to engage in the trash collection business. *State ex rel. American Eagle Waste Industries v. St. Louis County*, 272 S.W.3d 336, 343 (Mo.App.2008) ("The County is authorized to enter the business of trash collection . . . .").

**b. Appellants lack individual and taxpayer standing and to challenge County's failure to comply with section 260.247.**

In their second point, the appellants argue that the trial court erred in dismissing their petition because the County did not give the previous trash haulers two years notice by certified mail before

replacing them, thus violating section 260.247. At issue is whether the appellants have standing to bring this claim.[3]

■■■ If a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim. *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002). This state requires that plaintiffs have a "legally protectable interest in the litigation so as to be directly and adversely affected by its outcome." *Missouri State Medical Ass'n v. State*, 256 S.W.3d 85, 87 (Mo. banc 2008). "A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute." *Ste. Genevieve School District R–II v. Board of Alderman of City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002).

■ Missouri requires that a complainant be within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question to bring an action thereunder. A plaintiff must show a "personal stake in the outcome of the controversy" and allege "some threatened or actual injury resulting from the putatively illegal action." *Harrison v. Monroe County*, 716 S.W.2d 263, 266 (Mo. banc 1986); *see also Association of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

The purpose of section 260.247 is "to provide an entity engaged in waste collecting sufficient notice to make necessary business adjustments prior to having its services terminated in a given area." *American Eagle Waste Indust.*, 272 S.W.3d at 342–43. The appellants are not engaged in the business of trash collection. The appellants fail to show how the lack of notice adversely affected them; they do not have a "legally cognizable interest" in their section 260.247 claim. The appellants are not within the "zone of interests" protected by section 260.247 and thus do not have standing.

■ The appellants also claim to have taxpayer standing to challenge the possible violation of section 260.247. *Eastern Mo. Laborers Dist. Council v. St. Louis County* sets forth Missouri's test for taxpayer standing:

Absent fraud or other compelling circumstances, to have standing a taxpayer must be able to demonstrate a direct expenditure of funds generated through taxation, or an increased levy of taxes, or a pecuniary loss attributable to the challenged transaction . . .

781 S.W.2d 43, 47 (Mo. banc 1989). A party challenging an illegal government action "merely must show that their taxes went or will go to public funds that have been or will be expended due to the challenged action." *Duvall v. Coordinating Bd. For Higher Educ.*, 873 S.W.2d 856, 858 (Mo.App.1994).

■ Appellants argue that they have taxpayer standing because taxes will be spent on St. Louis County's trash district ordinances and program. Section 260.247 is not related to the establishment of the trash collection program it merely mandates that existing haulers receive notice before they are replaced. The appellants, however, have not pleaded any facts that taxpayer funds were expended due to the lack of notice to the trash haulers. The appellants fail to connect the challenged action—failure to give notice to the exist-

---

**3.** A party may have standing to bring some claims but not others. *See Conseco Finance Servicing Corp. v. Missouri Dept. of Revenue,* 98 S.W.3d 540, 543–44 (Mo. banc 2003); 15 Mo. Prac., Civil Rules Practice § 52.01–2 (2010 ed.).

ing haulers—and a pecuniary loss or public expenditure incurred by the taxpayers. Under *Eastern Mo. Laborers*, the appellants do not have taxpayer standing to challenge section 260.247.

**c. The appellants' claim under the Missouri Merchandising Practices Act relied on their other claims alleging that the ordinances were void, and thus should be dismissed.**

 In point VII, appellants argue that the defendants, both the County and the named trash haulers, violated the MPA by (1) making "false statements" about the legality of the trash ordinances and about no need for a vote and (2) by coercing citizens to transact business with the selected trash haulers through threat of prosecution of residents who do not pay the amounts assessed by the trash haulers. They claim these actions are deceptive and unfair under the MPA.

The appellants' arguments are derivative of their earlier claim that the ordinances are invalid. As noted above, these ordinances are not invalid. It is not unlawful to enforce valid laws.

**V. Because Points I, II, III and VII are dismissed, it not necessary for this Court to address Points IV, V, VI and VIII.**

In points IV and V, the appellants argue that the trial court erred by dismissing their claims because laches and mootness does not apply. Point VI and VIII assert that the trial court erred by dismissing their claims because illegal government exactions are recoverable and because the voluntary payment doctrine does not apply in this case. Because (1) the ordinances were not improper under the County's charter, (2) the appellants did not have standing to bring a claim under section 260.247, and (3) the claim under the MPA failed, dismissal was appropriate, and it is unnecessary for this Court to reach these additional issues.

**VI. Conclusion**

For the foregoing reasons, the trial court's judgment is affirmed.

RUSSELL, BRECKENRIDGE, FISCHER and STITH, JJ., concur. WOLFF, J., dissents in separate opinion filed; TEITELMAN, C.J., concurs in opinion of WOLFF, J.

MICHAEL A. WOLFF, Judge.

This is a simple case. The St. Louis County charter says the county may create "districts" in unincorporated areas within which garbage collection can be provided and that funds for garbage collection can come from a "service charge" on the residents.[1]

The county charter provision does not say that the service charge must be collected by the county. The service charge in this case is collected by the garbage hauler that is given the exclusive right to collect garbage in a given district.

Most significantly, the charter provision requires that the voters of a district approve the arrangement. This would seem to be appropriate and follows from the fact that a private garbage hauler is to be given an exclusive right in the residents'

---

1. Section 2.180.24 of the county charter provides that the county council has the power by ordinance to:

Provide for the creation of districts in the unincorporated areas of the county within which may be provided ... garbage and refuse collection and disposal ... and such kindred facilities as the voters therein by a majority of those voting may approve, the same to be paid for from funds raised by special assessment, general taxation or service charge, or any combination thereof within such districts ....

district to collect garbage and impose a fee for the service.

This is not a case in which a bedrock principle of democracy is at stake. I simply disagree with the majority's reading of the county charter provision. I would reverse the circuit court's judgment and let the voters have their way with their garbage. I respectfully dissent.