AMERICAN EAGLE WASTE INDUS-
TRIES, LLC, et al., Respon-
dents/Cross–Appellants,

v.

ST. LOUIS COUNTY, Missouri,
Appellant/Cross–
Respondent.

No. SC 92072.

Supreme Court of Missouri,
En Banc.

July 31, 2012.

Rehearing Denied Oct. 30, 2012.

Patricia Reddington, Cynthia L. Hoemann, County Counselor's Office, Clayton, for St. Louis County.

Jane E. Dueker, Nicole S. Zellweger and Crystal K. Hall, Stinson Morrison Hecker LLP, St. Louis, for American Eagle.

Kevin M. O'Keefe and Edward J. Sluys, Curtis, Heinz, Garrett & O'Keefe PC, St. Louis, Daniel R. Wichmer, Springfield, for Missouri Municipal League, Missouri Municipal Attorneys Association and St. Louis County Municipal League.

PER CURIAM.

### I. Introduction

In 2008, St. Louis County ("County") assumed control of solid waste collection activities in the County's unincorporated areas. Prior to that, waste collection services in those areas had been provided by private entities. Among them were American Eagle Waste Industries, LLC; Meridian Waste Services, LLC; and Waste Management of Missouri, Inc. (collectively, "Haulers"). Following a 2007 amendment to section 260.247, which extended hauler-protective business regulations to counties that wish to provide trash collection, Haulers sued County in 2008 for a declaratory judgment that County must comply with section 260.247. On appeal, the court of appeals ruled that section 260.247 applied to County, despite its claim that its status as a charter county made the statute inapplicable.

The case was remanded to the circuit court for further proceedings, and Haulers added the claims on appeal here, including a claim that they suffered money damages as a result of County's failure to comply with the statute. The circuit court found County liable to Haulers on the theory of implied in law contract. After determining damages and assuming a 5–percent profit, the circuit court awarded Haulers $1.2 million in damages. This Court reverses the circuit court's calculation of damages, affirms the judgment in all other respects, and remands the case to the circuit court.

## II. Facts and Procedural History

Each group of Haulers, as private entities, had provided trash collection services to clients in parts of unincorporated St. Louis County prior to December 2006. On December 12, 2006, the St. Louis County council enacted Ordinance No. 23,023, which created significant changes to the charter county's regulation of waste collection in unincorporated areas. Among the changes was the addition of the following two sections:

**607.1300 Designation of Collection Areas**

1. The County Executive shall, by January 15, 2008, *establish areas within the unincorporated County for the collection and transfer of waste and recovered materials.* The boundaries of such areas shall be determined after consideration of factors including size, compactness, road system and other relevant considerations.

**607.1310 Grant of Contract**

1. The County Executive is authorized to advertise for bids or proposals from private or public entities for the provision of services relating to collection and transfer of waste and recovered materials in those areas designated in accordance with Section 607.1300. Such bids or proposals may provide for such services in one or more areas.

2. Contracts shall be awarded by order of the County Council to persons that have submitted the most responsible bids or proposals. Such contracts shall require that the person awarded the contract shall comply with all duties imposed by this Waste Management Code; shall provide for exclusive services in the designated area or areas; shall provide for a term not to exceed three (3) years; and shall contain such other terms and conditions approved by the County Counselor.

(Emphasis added). Haulers admit they had actual notice of Ordinance No. 23,023's passage on the day it was enacted. Haulers also received letters from County about one month later notifying them of the changes to the waste management code. The letters, dated January 8, 2007, read in pertinent part:

Several of the changes made to the Code will have an immediate effect on all waste haulers that provide residential collection service in St. Louis County.... Some of the highlights of the new Code requirements are:

- Establishing basic level of service for [residences]....

- Basic service level applies throughout St. Louis County.

- Basic service level requirements are to be implemented by January 15, 2007 unless there is a valid contract for service in effect by that date. If a valid contract is in effect, then the implementation date is the later of January 15, 2008 or the expiration of the contract.

- Trash collection districts for unincorporated St. Louis County are to be established and contracts in place by January 15, 2008.

We have scheduled a meeting for Wednesday, January 17, 2007.... Please come with your ideas of how we can better implement these new provisions and any obstacles you foresee....

Haulers' representatives appeared at several county council meetings in 2007 and 2008 to comment on Ordinance No. 23,023 and how it should be implemented.

On June 26, 2007, after County had begun implementing its trash collection program, but before trash collection districts for unincorporated St. Louis County had been established, the governor signed into law Senate Bill No. 54, titled:

An Act to repeal sections 260.200, 260.211, 260.212, 20.240, 260.247, 260.249, 260.250, 260.330, 260.335, 260.360, 260.470, 260.800, 386.887, 414.420, 444.772, and 643.079, RSMo, and to enact in lieu thereof thirty-nine new sections relating to environmental regulation, with an effective date and penalty provisions.

Section 260.247 sets certain procedural rules for municipalities that expand their municipal waste collection activities into new territory. Prior to the enactment of S.B. 54, section 260.247 applied only to "cities." S.B. 54 amended section 260.247 to apply to all "cities and political subdivisions." The revised version of section 260.247, which became effective January 1, 2008, provides:

1. Any city or political subdivision which annexes an area or enters into or expands solid waste collection services into an area where the collection of solid waste is presently being provided by one or more private entities, for commercial or residential services, *shall notify the private entity or entities of its intent to provide solid waste collection services in the area by certified mail.*
2. A city or political subdivision *shall not commence solid waste collection in such area for at least two years from the effective date of the annexation or at least two years from the effective date of the notice* that the city or political subdivision intends to enter into the business of solid waste collection or to expand existing solid waste collection services into the area, *unless the city or political subdivision contracts with the private entity or entities to continue such services for that period.* If for any reason the city or political subdivision does not exercise its option to provide for or contract for the provision of services within an affected area within three years from the effective date of the notice, then the city or political sub-

division shall renotify under subsection 1 of this section.
3. If the services to be provided under a contract with the city or political subdivision pursuant to subsection 2 of this section are substantially the same as the services rendered in the area prior to the decision to annex the area or to enter into or expand its solid waste collection services into the area, *the amount paid by the city shall be at least equal to the amount the private entity or entities would have received for providing such services during that period.*

(Emphasis added).

In anticipation of the bidding process to award waste collection contracts for the newly created districts in unincorporated St. Louis County, County held pre-bid meetings on March 6, 2008, and April 21, 2008. Representatives of Haulers attended. Bids for new Trash District 3 opened on March 20, 2008; for new Trash Districts 1, 5 and 7 on May 14, 2008; and for new Trash Districts 2, 4, 6 and 8 on May 28, 2008. Each group of Haulers submitted at least one bid.

Haulers were not awarded any of the contracts. County awarded the contract for District 3 on April 8, 2008, and the remaining contracts were awarded on June 10 and 17, 2008. The winning bidders began providing waste collection services on July 1, 2008, for District 3, and on September 29, 2008, for the remaining districts.

Haulers filed this lawsuit May 29, 2008, before the contracts were awarded. Their first petition sought a writ of mandamus compelling County to comply with revised section 260.247's notice and two-year waiting period requirements. Alternatively, it sought a declaratory judgment that County's plan to contract with the companies submitting the winning bids violated sec-

tion 260.247. County immediately filed a motion to dismiss for failure to state a claim on which relief could be granted. The circuit court denied the writ and sustained the motion to dismiss on the ground that section 260.247 could not be constitutionally applied to St. Louis County because its status as a charter county allows it to regulate municipal functions. The circuit court found trash collection to be a "municipal function" within the province of County's ability to regulate.

Haulers appealed, and the court of appeals reversed the dismissal and remanded the cause to the circuit court for further proceedings. *State ex rel. Am. Eagle Waste Indus. v. St. Louis Cnty.*, 272 S.W.3d 336 (Mo.App.2008). The court of appeals held that dismissal for failure to state a claim was inappropriate because Haulers had invoked principles of substantive law sufficient to entitle them to a declaration of their rights, if any, under section 260.247.

The Court went on to address the merits of Haulers' claim and noted that "[t]he fundamental purpose of section 260.247 is to provide an entity engaged in waste collecting with sufficient notice to make necessary business adjustments prior to having its services terminated in a given area." *Id.* at 342. The court of appeals found section 260.247 has a general, state wide purpose with which County must comply. The court concluded:

> The County is authorized to enter the business of trash collection, and even to take it out of the hands of private collectors. But enacting an ordinance which would allow the County to do so without following the notice requirement and waiting period in section 260.247 would bring it "out of harmony with the general laws of the states" and amount to "[an] attempt to change the policy of the state as declared for the people at large.".... The County here can both

take over trash collection as it wishes while at the same time *remaining in harmony with the public policy of the state.* Accordingly, we find that the County does not have authority to legislate over the requirements of section 260.247.

*Id.* at 343 (emphasis added) (internal citations and quotations omitted). The court of appeals issued its opinion in October 2008. In January 2009, this Court declined to accept transfer of the appeal.

Haulers subsequently filed an amended petition in the circuit court, adding claims for breach of implied contract, violation of state antitrust law, violation of the Fifth Amendment's Takings Clause, and violation of due process under the Fourteenth Amendment. County removed the case to the United States District Court for the Eastern District of Missouri in June 2009. The federal court dismissed both federal law claims and remanded the case to state court in March 2010. *Am. Eagle Waste Industries, LLC v. St. Louis Cnty., Mo.*, No. 4:09–CV–816 CAS, 2010 WL 1049796 (E.D.Mo. March 18, 2010).

Back in the circuit court, County again moved to dismiss. The circuit court dismissed Hauler's antitrust count but overruled the motion as to all other counts. Later, Haulers moved for partial summary judgment as to County's liability on its implied in law contract count. The circuit court sustained the motion in September 2010, finding that County was "benefited in that it fully implemented its trash collection program without having to pay the existing haulers" and that County thereby was liable to Haulers on an implied in law contract.

In December 2010, the circuit court heard arguments about the issue of the measure of damages to which Haulers were entitled. The circuit court issued an order in January 2011 holding that "the

two year notice period for determining [Haulers'] damages began to run as of ... April 8, 2008 for District 3, and June 10 and 17, 2008 for the remaining Districts," the dates that County signed binding contracts with the new haulers. Finally, the court held that the measure of damages would be "the amount [Haulers would have] *received* for providing such services during [the two-year] period" (emphasis added). Accordingly, the circuit court sustained Haulers' objections to the discovery of any information regarding their profit margins.

Trial was held May 31, 2011, to determine the amount of Haulers' damages that County owed for breach of implied-in-law contract. At the outset, County objected to the use of projected gross revenues as the measure of damages. Only one witness testified at trial: a certified public accountant who gave expert testimony on behalf of Haulers. Relying on Haulers' business records, the accountant testified that, in his opinion, Haulers suffered a combined $23 million in damages. He arrived at this figure by estimating how much gross revenue each Hauler lost by not providing services for the entire two-year waiting period. His calculations were based on estimates of amounts Haulers would have billed rather than amounts Haulers would have received. The number of customers each Hauler would have gained or lost over the 24–month period also figured into his estimates. The accountant admitted he never before had used gross revenues as a measure of business losses. He further testified that he had not audited any of the business records Haulers provided.

The circuit court issued its final judgment, along with findings of fact and conclusions of law, on September 2, 2011. Despite its earlier order that the correct baseline for determining damages was the amount Haulers would have *received* dur-

ing the two-year waiting period, the circuit court held that the correct measure of damages was the amount of *net profit* Haulers would have realized during the period. The circuit court went on to assume that Haulers would have realized a 5–percent profit margin. Applying this 5–percent profit margin to the $23 million figure to which the expert witness testified, the circuit court concluded that Haulers collectively suffered $1.2 million in damages.

County appeals the circuit court's judgment, and Haulers cross-appeal.

### III. Standard of Review

■ "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Issues of law, however, are reviewed *de novo*. *Murrell v. State*, 215 S.W.3d 96, 102 (Mo. banc 2007).

### IV. Claims on Appeal and Cross–Appeal

County presents seven claims on appeal and Haulers raise five claims on cross-appeal. These claims can be examined in three groups: threshold issues, substantive appeals from the circuit court, and damage measurements.

County raises four threshold issues, meaning that, if these claims have merit, Haulers' lawsuit should be dismissed. First, County claims section 260.247 does not apply to its "municipal functions" because it is a charter county. County also argues that S.B. 54, which amended section 260.247, is invalid because it violates article III, section 23 of the Missouri Constitution, which requires a bill

have a clear title and no more than one subject. County next claims that applying section 260.247 to its waste collection program constitutes invalid retrospective application of the statute. Finally, County believes Haulers waived their right to complain of County's noncompliance with section 260.247 when they participated in County's bidding process. Haulers counter that law of the case bars each of these from consideration by this Court.

Both County and Haulers appeal substantive rulings from the circuit court's ruling on County's motion to dismiss and Haulers' summary judgment motion in 2010. Haulers argue on cross-appeal that the circuit court erred in dismissing their antitrust claim because County should not receive the "state action" exemption. County claims the circuit court erred in finding County liable on the theory of implied in law contract because, specifically, Haulers failed to show County received a "benefit" from Haulers.

The remainder of both parties' claims takes issue with the circuit court's measurement of damages. County first claims that Haulers should not receive damages because Haulers had actual notice of County's intent to implement a waste collection program on December 12, 2006, and the two-year waiting period began then. County also claims that all of the evidence as to damages provided by Haulers at trial was hearsay and not reasonably reliable. On cross-appeal, Haulers claim that the circuit court erred in declaring the measure of damages under section 260.247 to be profits and that entering judgment for 5 percent of the amount of gross revenue proven at trial was contrary to the law and against the weight of the evidence. Finally, Haulers argue the circuit court should have awarded Haulers prejudgment interest on their damages pursuant to section 408.020, RSMo.

## V. Threshold Issues

Haulers argue that each of County's threshold issues are claims that were raised or should have been raised in the circuit court when County filed its motion to dismiss in 2008. As such, Haulers believe these claims constitute law of the case, and this Court should not allow County to relitigate them here. Law of the case doctrine precludes consideration of the first threshold issue: the application of section 260.247 to County. The other threshold issues, including County's claims regarding article III, section 23, the retrospective application of 260.247, and waiver and estoppel, are denied on the merits.

### A. County's Claim that Section 260.247 is Inapplicable

■ County argues that, as a charter county, it need not comply with section 260.247's notice and two-year waiting period requirements. County asserts that sections of its local code supersede section 260.247 because both relate to waste management, which is a "municipal function." County believes waste management regulation is reserved to the political subdivision.

The court of appeals previously considered this argument on the merits and discussed the proper interpretation of section 260.247 at length before rejecting County's position. The court of appeals held:

The County is authorized to enter the business of trash collection, and even to take it out of the hands of private collectors. But enacting an ordinance which would allow the County to do so without following the notice requirement and waiting period in section 260.247 would bring it "out of harmony with the general laws of the states" and amount to "[an] attempt to change the policy of the state as declared for the people at large. A charter county's exercise of power

that produces this result is impermissible."

County then applied for transfer to this Court—an invitation this Court declined.

■■■ "The doctrine of law of the case governs successive appeals involving substantially the same issues and facts, and applies appellate decisions to later proceedings in that case." *Williams v. Kimes,* 25 S.W.3d 150, 153 (Mo. banc 2000). A previous holding constitutes "law of the case," precluding relitigation of issues on remand and subsequent appeal. *Id.* at 154. Generally, the decision of an appellate court is the law of the case for all points presented and decided "as well as for matters that arose prior to the first adjudication and might have been raised but were not." *Walton v. City of Berkeley,* 223 S.W.3d 126, 129 (Mo. banc 2007).

■■ The doctrine of law of the case is necessary to ensure uniformity of decisions, protect the parties' expectations, and promote judicial economy. *Id.* The doctrine is "more than merely a courtesy: it is the very principle of ordered jurisdiction by which the courts administer justice." *Davis v. J.C. Nichols Co.,* 761 S.W.2d 735, 738 (Mo.App.1988). Appellate courts do have discretion to consider an issue when there is a mistake, a manifest injustice, or an intervening change of law. *State v. Johnson,* 22 S.W.3d 183, 189 (Mo. banc 2000). But when there is no "demonstrable error in the first decision," law of the case is "peculiarly appropriate." *State v. Phillips,* 324 S.W.2d 693, 694 (Mo.1959).

This Court declines to consider anew this issue that the parties fully litigated to a final judgment three and a half years ago. County cannot have multiple bites at the apple in attempting to determine this issue favorably. Moreover, the parties—and other Missourians—need the ability to rely on appellate court decisions. Indeed, the court of appeals decision in which these claims first were litigated has been cited as law. *See, e.g., Weber v. St. Louis County,* 342 S.W.3d 318 (Mo. banc 2011) (citing *Am. Eagle Waste Indus.,* 272 S.W.3d 336). With no demonstrable error in the first appellate decision, law of the case is "peculiarly appropriate" here.

The parties had every opportunity at that time to present their strongest argument regarding County's status as a charter county and the applicability or inapplicability of section 260.247, and the court of appeals fully investigated the arguments and ruled on the issue. This Court holds that it is the law of the case that County was required to adhere to section 260.247's requirements.

### B. County's Article III, Section 23 Claims

■■■ County claims that S.B. 54 violates the requirements in article III, section 23 of the Missouri Constitution that a bill have a single subject and a clear title. Article III, section 23 states that "[n]o bill shall contain more than one subject which shall be clearly expressed in its title." This constitutional provision limits the legislature in two distinct but related ways by creating a single subject rule and a clear title requirement. *See Jackson Cty. Sports Complex Auth. v. State,* 226 S.W.3d 156, 161 (Mo. banc 2007). "This Court will resolve doubts in favor of the procedural and substantive validity of an act of the legislature." *Hammerschmidt v. Boone Cty.,* 877 S.W.2d 98, 102 (Mo. banc 1994). Because attacks against legislation based on constitutionally imposed procedural limitations are not favored, this Court interprets the procedural limitations of article III, section 23 liberally and will uphold the constitutional validity of S.B. 54 "unless the act clearly and undoubtedly violates the constitutional limitation." *Id.*

■■■ S.B. 54 bore the title "[a]n act to repeal sections ... and to enact in lieu

thereof thirty-nine new sections relating to environmental regulation, with an effective date and penalty provisions." A title is constitutionally clear when it "indicate[s] in a general way the kind of legislation that was being enacted." *Fust v. Atty. General for the State of Mo.*, 947 S.W.2d 424, 428 (Mo. banc 1997). However, a title may not be too broad or amorphous such that it fails to identify a single subject. *St. Louis Health Care Network v. State*, 968 S.W.2d 145, 147 (Mo. banc 1998). County contends that the title is not sufficiently clear because the title relates to environmental regulations but also includes provisions intended to protect business entities engaged in solid waste management. This Court, in *Corvera Abatement Technologies, Inc. v. Air Conservation Commission*, addressed clear title and single subject challenges to a bill relating to "environmental control." 973 S.W.2d 851 (Mo. banc 1998). In that case, this Court held that "environmental control" satisfies the clear title requirement because the title provided sufficient notice of a single subject of legislation in that it showed an intention to "regulate environmental resources through placing substantive standards on certain activities" and, at the same time, "ensure that the purposes of environmental control are accomplished." *Id.* at 861–62. The title showed the legislature's intent to cover "environmental regulation in its plain and ordinary sense." *Id.* at 862.

Consistent with this Court's holding that "environmental control" satisfies the clear title requirement, the title "environmental regulation" of S.B. 54 likewise shows the legislature's intent to protect or manage environmental resources, and it fairly includes provisions to ensure that its pur-

poses are accomplished. *Id.* Ensuring these environmental provisions are accomplished includes regulation of the closely connected solid waste management industry. "Environmental regulation" is a sufficiently clear title for this purpose.

 A bill will not violate the single subject requirement so long as "the matter is germane, connected and congruous." *Id., citing State v. Mathews*, 44 Mo. 523, 527 (1869). A "subject" within the meaning of article III, section 23 "includes all matters that fall within or reasonably relate to the general core purpose of the proposed legislation." *Id.* The subject of a bill may be "clearly expressed by . . . stating some broad umbrella category" when a bill has "multiple and diverse topics" within a single, overarching subject. *Jackson Cty. Sports Complex Auth.*, 226 S.W.3d at 161.

The original purpose of S.B. 54, and its single subject, is environmental regulation. Therefore, the bill may not include matters not "germane, connected and congruous" to environmental regulation. *Hammerschmidt*, 877 S.W.2d at 102. In *Corvera Abatement Technologies*, Corvera argued that a provision relating to certification and training requirements for asbestos contractors violated this rule because it did not directly regulate the way in which a person should dispose of asbestos. *Id.* This Court rejected Corvera's argument and found that the bill appropriately "includes both substantive provisions that directly regulate environmental hazards and administrative provisions that allow for the enforcement of these and other provisions that protect the environment." *Id.*[1]

Here, County contends that S.B. 54, the purpose of which is environmental

---

1. House Bill Nos. 77, 78 and 356 amended, *inter alia*, sections 292.602 (establishing the Missouri emergency response commission), 292.617 (requiring reports when storing explosives on property), 643.225 (establishing asbestos abatement projects), and 643.228 (requiring training courses for asbestos removers).

regulation, violates the single subject rule because the bill includes regulation of business interests. S.B. 54 includes substantive regulations that directly regulate environmental hazards and establishes administrative procedures to allow for the enforcement of those regulations. *See* sections 256.700 (requiring a fee for surface mining), 256.710 (establishing a council to review fees), 260.211 (providing criminal penalties for improper waste disposal), and 260.247 (providing a regulatory framework for the division of contracts in solid waste disposal areas). S.B. 54 also amends section 260.247, which regulates the process by which a political subdivision expands or enters into solid waste collections services. Just as in *Corvera Abatement Technologies*, the provision including regulation of business interests fairly relates to and is a means of accomplishing environmental control. S.B. 54 satisfies the requirements of article III, section 23 of the Missouri Constitution. Accordingly, County's claim is denied on its merits.

### C. County's Retrospective Application Claim

Next, County argues that Hauler's attempt to force County to comply with section 260.247 constitutes an impermissible retrospective application of the statute. The statute became effective January 1, 2008, and County modified its waste collection program in 2006.

Article I, section 13 of the Missouri Constitution prohibits the enactment of any law that is "retrospective in its operation." *See* Matthew D. Turner, *Retrospective Lawmaking in Missouri: Can School Districts Assert Any Constitutional Rights Against the State? Savannah R–III School District v. Public School Retirement System of Missouri*, 63 Mo. L.Rev. 833, 837 (1998). Article I, section 13 does not prohibit retrospective laws merely relating to past transactions but rather prohibits laws that operate retrospectively, affecting past transactions "to the substantial prejudice of parties interested." *Fisher v. Reorganized School Dist. No. R–V of Grundy Cnty.*, 567 S.W.2d 647, 649 (Mo. banc 1978). Although County enacted its ordinance in 2006, before the statute took effect, County did not contract with the new haulers until April and June of 2008, after the statute took effect. There were no "past transactions" to which the statute applied. County's retrospective application claim is denied.

### D. County's Claims of Waiver and Estoppel

County argues that Haulers waived their right to claim damages under section 260.247 by participating in County's bidding process before insisting that County follow the requirements of section 260.247. Alternatively, County claims Haulers should be estopped from claiming damages because of the same action.

Waiver is the "intentional relinquishment of a known right." *Richardson v. Richardson*, 218 S.W.3d 426, 430 (Mo. banc 2007). One voluntarily proceeding under a statute or ordinance, and claiming the benefits conferred by it, may not question its validity to avoid its burdens. *St. Louis Pub. Service Co. v. City of St. Louis*, 302 S.W.2d 875, 879 (Mo. banc 1957). Haulers had no contract with County and had no contractual rights to relinquish when they sued County for failing to adhere to section 260.247. Further, while Haulers did submit bids to County, the bids were not accepted; as such, Haulers received no "benefit."

The elements of estoppel are "(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other

party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act." *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 386–87 (Mo. banc 1989). County has not shown these elements. County did not take any action on the faith of Hauler's act of supplying bids. In addition, County was not injured by the submission of Hauler's bids. County's claims of waiver and estoppel are denied. Moreover, Haulers had every right to claim that County must comply with section 260.247, regardless of their action in submitting a bid.

## VI. Substantive Appeals

### A. Haulers' Antitrust Claim

In their first amended petition, Haulers claimed that County violated Missouri antitrust law in creating a monopoly trash district in unincorporated St. Louis County. The circuit court dismissed the claim. Haulers argue the dismissal was in error because County's failure to abide by the notice and two-year waiting period requirements in section 260.247 means that County did not regulate waste collections pursuant to "authorized" monopoly activity and, thereby, no longer falls under the "state action" exemption to Missouri antitrust laws.

Missouri prohibits restraint of trade by monopolization. Section 416.031, RSMo Supp.2010, states that "[e]very contract, combination or conspiracy in restraint of trade or commerce in this state is unlawful." Further, "[i]t is unlawful to monopolize, attempt to monopolize, or conspire to monopolize trade or commerce in this state." Sec. 416.031.2. But "state action" is exempted if the arrangements are "expressly approved or regulated by *any* regulatory body or officer acting under statutory authority of this state or of the United States." Sec. 416.041.2 (emphasis added).

■ For a political subdivision to prove its actions should be exempt and assert a successful defense to an antitrust suit, it need show only that it acted pursuant to a "clearly articulated and affirmatively expressed state policy" that is "actively supervised" by the state. *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F.2d 517, 520 (8th Cir.1985) (*citing Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985)). In Missouri, cities and counties are expressly authorized by statute to provide for the "collection and disposal of solid wastes," and they may contract with "any person, city, county, common sewer district, political subdivision, state agency or authority" to provide those services. Secs. 260.215.1; 260.215.3(1), RSMo Supp.2010.

■ Here, the Missouri legislature affirmatively expressed a policy of allowing cities and counties to regulate waste management through section 260.215. County, therefore, is a regulatory body acting under statutory authority, even if it does not comply fully with section 260.247. County's noncompliance does not mean its actions fall outside the state action exemption—it only means it may have violated the statute by noncompliance. Instead of arguing County violated antitrust law, Haulers' claim is that County violated section 260.247.

### B. Haulers' Claim for Breach of Implied in Law Contract

■ In their first amended petition following remand, Haulers alleged that, by failing to comply with section 260.247's notice and two-year waiting period requirements, County breached an implied in law contract. It was on this basis the circuit court granted Haulers relief.

■ "Unlike a contract implied in fact, a contract implied in law is imposed, or created, without regard to the promise of the party to be bound.... Thus, a

contract implied in law is not actually a contract and, instead, is an obligation to do justice where no promise was ever made or intended." *Johnson v. Estate of McFarlin ex rel. Lindstrom,* 334 S.W.3d 469, 474 (Mo.App.2010) (citations and quotations omitted). Courts sometimes use the term "quasi-contract" to refer to this phenomenon. *See Karpierz v. Easley,* 68 S.W.3d 565, 570 (Mo.App.2002). "The essential elements of quasi-contract are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable." *Pitman v. City of Columbia,* 309 S.W.3d 395, 402 (Mo.App.2010).

County correctly argues that Haulers cannot succeed because there was no "tangible benefit" conferred on County because of its failure to adhere to section 260.247. While Haulers had contracted with clients in unincorporated St. Louis County to provide waste collection services during the two-year period, Haulers never actually provided those services—County allowed another entity to provide them. Haulers did not confer a benefit on County that unjustly enriched County. If Haulers had provided the services and never received compensation from County, Haulers would have an implied in law contract claim. That did not happen here.

### C. Implied Private Right of Action

While Haulers have failed to show a claim for implied contract, in determining whether a pleading adequately states a claim for relief on a particular basis, "[t]he rule is well established in Missouri that the character of a cause of action is deter-

mined from the facts stated in the petition and not by the prayer or name given the action by the pleader." *State ex rel. Conaway v. Consol. Sch. Dist. No. 4 of Iron Cnty.,* 417 S.W.2d 657, 659 (Mo. banc 1967).

 "To properly plead a cause of action, the 'petition must state allegations of fact in support of each essential element of the cause pleaded.'" *Brock v. Blackwood,* 143 S.W.3d 47, 57 (Mo.App.2004), *quoting Duvall v. Lawrence,* 86 S.W.3d 74, 80 (Mo.App.2002). "It is the facts stated in the petition, along with the relief sought, which under our system of code pleading are to be looked at to determine the cause of action, rather than the form of the petition." *Memco, Inc. v. Chronister,* 27 S.W.3d 871, 875 (Mo.App.2000). To be deemed sufficient, a petition need not even label the theory upon which a plaintiff seeks recovery. *Empiregas, Inc. of Rolla v. Whitson,* 902 S.W.2d 347, 348 (Mo.App. 1995).

 An appellate court is "primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Bus. Men's Assur. Co. of Am. v. Graham,* 984 S.W.2d 501, 506 (Mo. banc 1999). A trial court judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient. *Id.* Applying these principles, this Court will look to the petition to determine whether "it invokes principles of substantive law which entitle the plaintiff to relief and informs the defendant of what the plaintiff will attempt to establish at trial." *Chronister,* 27 S.W.3d at 876, *quoting Whitson,* 902 S.W.2d at 348.[2]

---

2. *Chronister* is particularly instructive, as the plaintiff there had prevailed at the trial court level based on a petition in which the sole count was titled "Conversion." *Memco, Inc. v. Chronister,* 27 S.W.3d 871 (Mo.App.2000).

On appeal, the defendant argued that the judgment was based on an unavailable remedy because an action in conversion had not been pleaded or proven properly. *Id.* at 873.

Here, Haulers' basic claim is not complicated: They argue that, by failing to provide notice and abide by the two-year waiting period, County violated section 260.247. While Haulers did not expressly reference a claim for relief based on an implied right of action contained in section 260.247, the character of that cause of action was adequately determinable from the facts Haulers alleged in their amended petition. Haulers alleged that County violated section 260.247 and that such violation resulted in damages to Haulers. In particular, an entire section—constituting nearly three full pages—is titled "The County's Actions Are in Violation of State Law." Specific allegations include 1) that County violated the notice provision and timing requirements contained in section 260.247; 2) that it acted "in contravention of ... § 260.247;" and 3) that its actions constituted an "illegal course." Indeed, County was aware that Haulers were asserting a violation of section 260.247 because it argued the statute did not apply to its actions. Haulers' claim for relief was sufficiently broad to encompass relief based on an implied private right of action for violation of this statute, for they requested "damages in excess of $25,000 plus attorneys' fees, and ... such other and further relief as this Court deems just and proper."

For these reasons, it is proper to treat Haulers' claims as asserting a private right of action for violation of a statute. That raises the legal question of whether a private right of action is created in favor of Haulers under the statute.

By its plain terms, section 260.247 does not provide an express remedy for its violation. Nevertheless, "[w]hen a legislative provision protects a class of persons by the requirement or proscription of certain conduct but does not provide a civil remedy for the violation, *the court may, if it determines that the remedy is appropriate to further the purpose and ensure the effectiveness of the enactment,* accord to an injured member of the class a right of action." *Jensen v. Feely,* 691 S.W.2d 926, 928 (Mo.App.1985) (emphasis in original). If it clearly appears "to have been the legislative intent," courts will find implied private causes of action in such cases. *Christy v. Petrus,* 365 Mo. 1187, 295 S.W.2d 122, 126 (1956).

This Court has stated, however, that "[a] private remedy will not be implied when it does not promote or accomplish the primary goals of the statute." *Shqeir v. Equifax, Inc.,* 636 S.W.2d 944, 948 (Mo. banc 1982). Moreover, courts often have been reticent to recognize private causes of action where the legislature has established remedies via other means of enforcing statutory obligations. *See, e.g., id.* (declining to recognize a private right of action where a statute authorized a state official to impose a penalty on an insurer and to suspend or revoke the insurer's license on the insurer's willful violation of the statute).

This Court previously has found the purpose of section 260.247 is "to provide an *entity* engaged in waste collecting sufficient notice to make necessary business adjustments prior to having its services terminated in a given area." *Weber v. St. Louis County,* 342 S.W.3d 318, 323 (Mo. banc 2011) (emphasis added). Subsection 3, specifically, shows the legislature's intent to protect the business entities al-

In affirming the trial court's judgment, the court of appeals explained that, although the plaintiff had titled his claim as one sounding in conversion, "the facts stated [in the petition] referred to and supported multiple causes of action," *id.,* and "[t]he claims asserted in the petition [were] broad enough to state a cause of action for fraud"—the basis on which, the court of appeals found, relief actually had been granted. *Id.* at 875.

ready providing trash collection services. Section 260.247.3 guarantees that previous haulers receive the same amount for which they contracted for two years following a political subdivision's decision to provide services.

The reasons for these protections are obvious. County could easily decide to provide waste collection services in unincorporated parts of the county. Then it might agree to hire Haulers for the two-year waiting period but only if they accept a lower contract price. In that situation, Haulers face the risk of losing business or being forced to renegotiate their contract unexpectedly. Subsection 3 also provides Haulers the opportunity to wind up business in the two-year waiting period if they are not chosen to provide services.

Although the facts here are not those specifically contemplated by the statute, they are simply more extreme. Instead of attempting to renegotiate Haulers' contract for the same services at a lower price and lowering Haulers' expected profits, County has cut Haulers out completely. Haulers received nothing instead of a forced lower contract price.

Moreover, the clear implication of section 260.247 is that the legislature intended a right to damages in this situation. The legislature intended for Haulers to provide service and receive their contract price for two years following notice. *See* secs. 260.247.1—260.247.3. County cannot bypass the requirements of section 260.247.3 by refusing to hire Haulers completely. The legislature's intention to protect Haulers' contracts for two years following County's notice is clear. Haulers have demonstrated that recognizing an implied private right of action in section 260.247 promotes the primary goal of the statute and is, therefore, clearly consistent with legislative intent.

Recognizing an implied private remedy for violations of the statute's notice provision or its timing requirements naturally serves to advance that goal. Moreover, unlike other cases in which this Court has declined to recognize an implied cause of action,[3] section 260.247 provides no other enforcement mechanism whereby Haulers' rights can be protected.[4] Under the particular circumstances of this case, Haulers have demonstrated that section 260.247 permits them to pursue a civil remedy against County for County's violation of the statute.

In sum, while the circuit court took an incorrect route in finding County liable through implied in law contract, the court still reached the correct result in finding County liable. Judgment as to liability is affirmed.

## VII. Damage Measurement

The only remaining issues before the Court, raised by either party, are how the circuit court ought to have calculated Haulers' damages. The circuit court, in its

---

**3.** *See Johnson v. Kraft Gen. Foods, Inc.*, 885 S.W.2d 334 (Mo. banc 1994); *R.L. Nichols Ins., Inc. v. Home Ins. Co.*, 865 S.W.2d 665 (Mo. banc 1993); *Shqeir* at 948.

**4.** Section 260.249 purports to provide for administrative penalties when section 260.247 is violated, but it does not apply in this situation. *See* sec. 260.249 (stating that when the director of natural resources determines a provision of sections 260.200 to 260.281 has been violated, he may assess an administra-

tive penalty on the violator). First, the rules used for assessing the penalty clearly contemplate that a violation would cause endangerment to either human health or the environment, whereas here, County's violation only caused harm to a business entity. See 10 CSR 80–2.040(3). Additionally, any penalty assessed "shall be paid to the county in which the violation(s) occurred." 10 CSR 80–2.040(4). County has violated the statute in this situation. It makes no sense for County to pay a penalty to itself.

hearing on damages, excluded evidence of Haulers' expenses or net profit, allowing only evidence of their gross revenue for a two-year period starting April 8, 2008. In its final judgment, the circuit court awarded Haulers 5 percent of their gross revenue for that two-year period.

County claims the circuit court judgment was in error because Haulers are not entitled to any damages as Haulers have no rights under the statute. County also complains that the circuit court chose the wrong date to start the running of damages for the two-year waiting period. Haulers claim on cross-appeal that the circuit court erroneously found damages to be limited to profits instead of awarding total gross revenue lost. Haulers also claim they are entitled to prejudgment interest. To address these claims, this Court first must determine Haulers' rights and obligations under section 260.247.

### A. Haulers' Rights under Section 260.247

 When interpreting statutory law, the court must ascertain the intent of the legislature and give effect to that intent if possible. *Greenlee v. Dukes Plastering Serv.*, 75 S.W.3d 273, 276 (Mo. banc 2002). The intent of the legislature may be determined by considering the "plain and ordinary meaning" of the terms. *Id.* "The construction of statutes is not to be hyper-technical, but instead is to be reasonable and logical and to give meaning to the statutes." *Lewis v. Gibbons*, 80 S.W.3d 461, 465 (Mo. banc 2002).

Section 260.247, as amended, plainly states that Haulers were entitled to notice, by certified mail, of County's intent to provide waste collection services in the county. Sec. 260.247.1. Equally clear is County's prohibition on commencing waste collection in the area for two years, unless it hired Haulers. Sec. 260.247.2. Subsection 3 sets forth further requirements of

County and evidences the legislatures' intent in passing and amending this statute:

> If the services to be provided under a contract with the city or political subdivision pursuant to subsection 2 of this section are substantially the same as the services rendered in the area prior to the decision of the city to annex the area or to enter into or expand its solid waste collection services into the area, *the amount paid by the city shall be at least equal to the amount the private entity or entities would have received* for providing such services during that period.

(emphasis added). In other words, if County chose to contract with Haulers during the two-year waiting period, County cannot contract with Haulers for a lower price than they otherwise would have received in that two-year time frame.

 Reading all three subsections together, Haulers were *entitled* to continue providing waste collection services for two years. County either could have allowed Haulers to provide services *directly* to clients for that period or could have contracted with Haulers to provide the same services *through* the County for that period—but only if County's contract with Haulers was for the same amount.

 Haulers have the right to seek damages from County for the violation of section 260.247. To give effect to the legislature's intent and provide the same recovery intended by subsection 3, County must pay Haulers that to which they were entitled: the amount they "would have received" under their contract during the two-year waiting period. Sec. 260.247.3. Determining this amount requires this Court to interpret the phrase "would have received."

## B. Haulers' Amount of Damages

■ "[F]or every actionable injury there is a corresponding right to damages, and such injury arises whenever a legal right of plaintiff is violated." *Rusk Farms, Inc. v. Ralston Purina Co.,* 689 S.W.2d 671, 681 (Mo.App.1985) (*citing Wente v. Shaver,* 350 Mo. 1143, 169 S.W.2d 947 (1943)). Because Haulers had a right under section 260.247 to continue to provide services for two years, and County violated that right, Haulers have a right to damages.

Under subsection 3 of 260.247, Haulers, during the two-year waiting period, would have been able to collect "the amount [they] *would have received* for providing such services during that period." Sec. 260.247.3 (emphasis added). The amount Haulers "would have received" for that two-year waiting period was their contract price for their services. However, Haulers would have been providing the service of trash collection at the time, so they would have had every normal operating expense and business cost during the two-year time period.

■ In sum, the amount to which section 260.247 entitles Haulers is their projected receipts from their contract price, minus any business and operational costs Haulers would have incurred while providing waste collection services, considering all the circumstances. In other words, the circuit court correctly concluded that Haulers' damages are what would have been their *net profit* during the two-year waiting period.[5] This is in accordance with other damage determinations under Missouri law. *See Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.,* 155 S.W.3d 50, 55 (Mo.2005) ("In general, in calculating lost profits damages, lost revenue is estimated, and overhead expenses tied to the production of that income are deducted from the estimated lost revenue.").

■ However, the circuit court was incorrect to exclude discovery or evidence of Haulers' expenses or net profit. When the measure of damages is net profit, the basis for determining the expected profit should be reasonably certain. "In evaluating the sufficiency of evidence to sustain awards of damages for loss of business profits the appellate courts of this state have made stringent requirements, refusing to permit speculation as to probable or expected profits, and requiring a substantial basis for such awards." *Id.* at 54.

On remand, both parties are allowed to discover, present evidence, and cross-examine regarding these subjects. The measure of damages is the net profit the Haulers' would have realized during the two-year period, considering all the circumstances. Because the parties must present further evidence regarding this issue, the able circuit court can rule on the other evidentiary issues as they arise.

## C. When Damages Began to Accrue under Section 260.247

Pursuant to section 260.247, a private entity is entitled to provide services during the two-year waiting period after a political subdivision decides to expand into an area and provide trash collection services. That period begins to run "from the effective date of the notice" by certified mail. Sec. 260.247.2. If the political subdivision fails to give the required notice, then the two-year period, by default, begins "at least two years from the effective date of the annexation." *Id.*

The circuit court found that the two-year period began on the dates County awarded contracts to companies to provide waste collection services in the newly cre-

---

5. *See* section VII.C, below, for a discussion of the date the two-year period began.

ated trash collection districts: April 8, 2008, for district 3, and June 10 and 17, 2008, for the other districts. The court reasoned that, in the absence of notice by certified mail as required by section 260.247, the two-year clock started running on these dates because County "signed binding contracts with the new haulers" and, thus, "County's *intent* [became] absolute" then (emphasis added).

County asserts that this was in error and, instead, that Haulers' dates of "actual notice" were either December 12, 2006, the day County adopted Ordinance No. 23,023, which Haulers learned of the day it was adopted, or January 7, 2007, the date County mailed a letter to the Haulers apprising them that the waste management code had been amended. County argues that under these dates, it is not liable for damages after either December 12, 2008, or January 7, 2009, when the two-year period expired.

▮▮▮▮ The purpose of section 260.247's notice requirement is different from that of most other notice requirements. Usually, the purpose of a notice requirement is to apprise the recipient that there is a legal action pending and to ensure that the recipient knows when and where the recipient can be heard regarding the matter—in other words, to effectuate due process. Here "[t]he purpose of section 260.247 is to provide an entity engaged in waste collecting sufficient notice to make necessary business adjustments prior to having its services terminated in a given area." *Weber,* 342 S.W.3d at 323. Section 260.247 guarantees private businesses nothing less than an *unequivocal statement* that a political subdivision intends to seize the businesses' client bases and at least two years following that unequivocal statement to wind down its operations.

▮▮▮ County never gave the certified notice required by section 260.247.1 to be-

gin trash collection and did not wait the two-year period to begin trash collection or hire Haulers to continue trash collection. To give effect to the legislature's intention that the two-year waiting period begins running when County gives official notice, Hauler's damages must have started accruing when County provided an *unequivocal statement* that Haulers no longer would be providing trash collection service similar to that provided by certified notice. *See Greenlee,* 75 S.W.3d at 276. This statement could not have occurred on the dates that County proposes, as noted by the circuit court, because County retained the discretion to abandon its program without consequence at that time. The same is true for the dates County held pre-bid meetings and opened the bidding process. County could still retreat from its program or it could comply with the statute and hire Haulers to provide service for two years on those dates. Those actions did not provide an unequivocal statement to Haulers that County was seizing their client bases.

However, when County signed contracts with new haulers to provide trash collection in the new districts, Haulers had an unequivocal statement that County did not intend to comply with the statute. By signing these binding contracts with new haulers on April 8, 2008, for district 3, and June 10 and 17, 2008, for the remaining districts, County manifested its intent to displace Haulers. The circuit court's judgment as to the date the two-year notice period for determining Haulers' damages began to run is affirmed. On remand, Haulers may present evidence of their expected revenue, set off by expenses, costs, and other circumstances, for a two-year period beginning April 8, 2008, for district 3, and June 10 and 17, 2008, for the other districts.

### D. Haulers Prejudgment Interest Claim

Finally, Haulers claim that section 408.020 provides them the right to collect prejudgment interest. Section 408.020 provides that creditors should recover prejudgment interest at the rate of 9 percent 1) "for all moneys after they become due and payable, on written contracts," 2) "and on accounts after they become due and demand of payment is made," 3) "for money recovered for the use of another, and retained without the owner's knowledge of the receipt," 4) "and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made." Prejudgment interest is awarded when the amount due is liquidated or "readily ascertainable by reference to recognized standards." *St. John's Bank & Trust Co. v. Intag, Inc.*, 938 S.W.2d 627, 630 (Mo.App.1997). Prejudgment interest is not awarded in cases in which the measure of damages is not clear. *Fohn v. Title Ins. Corp.*, 529 S.W.2d 1, 5 (Mo. banc 1975). Because the measure of damages was disputed and uncertain, section 408.020 is not applicable. The circuit court's judgment regarding prejudgment interest is affirmed.

### VIII. Conclusion

The circuit court's judgment as to the calculation of Haulers' damages is reversed. In all other respects, the judgment is affirmed. The case is remanded.

All concur.