

# SUPREME COURT OF MISSOURI
## en banc

CITY OF NORMANDY, ET AL.,　　　　　)　　*Opinion issued April 26, 2022*
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Appellants,　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　No. SC98998
　　　　　　　　　　　　　　　　　　)
MICHAEL L. PARSON IN HIS OFFICIAL )
CAPACITY AS GOVERNOR OF　　　　　 )
MISSOURI, ET AL.,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Respondents.　)

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon Beetem, Judge

In 2016, the Cole County Circuit Court entered a judgment permanently enjoining the state from enforcing sections 67.287[1] and 479.359.2 because it found those sections to be unconstitutional special laws. This Court affirmed that judgment. *City of Normandy v. Greitens*, 518 S.W.3d 183, 202 (Mo. banc 2017). After this Court restored the rational basis analysis for special laws claims in *City of Aurora v. Spectra Communications Group, LLC*, 592 S.W.3d 764 (Mo. banc 2019), the state filed a Rule 74.06(b)(5) motion for relief from the 2016 judgment. The state argued sections 67.287

---

[1] All statutory references are to RSMo 2016 unless otherwise noted.

and 479.359.2 are not special laws under the rational basis analysis reinstated in *City of Aurora*. The circuit court agreed and granted the state relief from judgment. Appellants, the City of Normandy, other municipalities, and two taxpayers (collectively, the "municipalities"), appealed. This Court has jurisdiction pursuant to article V, section 3 of the Missouri Constitution. Because the circuit court improperly assumed a change in decisional law was sufficient to warrant relief from judgment pursuant to Rule 74.06(b)(5), this Court vacates the circuit court's judgment and remands for further proceedings.

**Background**

In 2015, the General Assembly passed Senate Bill No. 5 ("SB 5") to address the claim that some local governments were engaging in the practice of "taxation-by-citation." SB 5 contains multiple provisions that apply statewide, including a statewide 20 percent cap on local government revenues generated from fines. § 479.359.2. In addition, SB 5 contains provisions applicable only to St. Louis County. First, SB 5 imposes a lower cap of 12.5 percent of revenue generated from fines for "any county with a charter form of government and with more than nine hundred fifty thousand inhabitants and any city, town, or village with boundaries found within such county," which currently describes only St. Louis County and municipalities within St. Louis County. *Id.* Second, SB 5 requires "municipalities" to meet certain minimum standards, including accounting and policing standards. § 67.287. As defined in section 67.287.1(2), a "municipality" is "any city, town, or village located in any county with a charter form of

2

government and with more than nine hundred fifty thousand inhabitants[.]"  Again, this definition describes only municipalities in St. Louis County.

Twelve municipalities in St. Louis County and two taxpayers filed a lawsuit arguing the provisions in SB 5 that apply only to St. Louis County were special laws in violation of article III, section 40 of the Missouri Constitution.  The circuit court agreed and entered a judgment finding sections 67.287 and 479.359.2 were unconstitutional special laws.  The circuit court permanently enjoined the state from enforcing the provisions in SB 5 that applied only to municipalities in St. Louis County.  In May 2017, this Court affirmed the circuit court's judgment.[2]  *City of Normandy*, 518 S.W.3d at 202.

In December 2019, this Court decided *City of Aurora*, 592 S.W.3d at 777, restoring the rational basis analysis for special laws claims that had "served the Court and the language of the constitution well for more than a century."  In so holding, this Court recognized "[t]he [use of this] rational basis analysis … has been diminished in recent years," and it called *City of Normandy* the "final misdirection" in the diminishing use of the rational basis analysis.  *Id.* at 778-79.

In January 2020, in the wake of this Court's decision in *City of Aurora*, the state filed a Rule 74.06(b)(5) motion for relief from the permanent injunction in the circuit court's 2016 judgment.  The state argued it was no longer equitable for the injunction to remain in force because SB 5 was not an unconstitutional special law under the rational

---

[2]  The circuit court also found sections 67.287 and 479.359 violated article X, sections 16 and 21 of the Missouri Constitution, but this Court reversed that portion of the circuit court's judgment because those claims were not ripe for review.  *City of Normandy*, 518 S.W.3d at 202-03.  That issue is not before the Court in this appeal.

3

basis analysis used in *City of Aurora*. The circuit court agreed and sustained the state's motion, lifting the permanent injunction that prohibited enforcement of sections 67.287 and 479.359.2. The municipalities appealed.

## Analysis

A firmly entrenched aspect of our judicial system is the principle of finality of judgments. This Court has long enforced the common law doctrines of *res judicata*, which "precludes relitigation of a claim formerly made," and collateral estoppel, which "precludes relitigation of an issue previously decided and incorporated into an earlier judgment." *Sexton v. Jenkins & Assocs., Inc.*, 152 S.W.3d 270, 273 & n.3 (Mo. banc 2004). Even more relevant to this case, "[t]he doctrine of law of the case provides that a previous holding in a case constitutes the law of the case and precludes relitigation of the issue on remand and subsequent appeal." *Walton v. City of Berkeley*, 223 S.W.3d 126, 128-29 (Mo. banc 2007). This concern with the finality of judgments serves several important interests, including protecting litigants from retrying identical cases and issues, ensuring uniformity of decisions, and promoting judicial economy. *Am. Eagle Waste Indus., LLC v. St. Louis Cnty.*, 379 S.W.3d 813, 825 (Mo. banc 2012). Most importantly, "there must always be an end to litigation and a certainty as to the rights of litigants must be achieved so that dignity and respect for judicial determinations will be maintained." *Goldsmith v. M. Jackman & Sons, Inc.*, 327 F.2d 184-85 (10th Cir. 1964).

This Court has provided narrow exceptions to the general principle of finality under Rule 74.06, which provides for relief from judgment in limited circumstances. Pertinent to this case, Rule 74.06(b)(5) allows a court to relieve a party from a final

4

judgment when "it is no longer equitable that the judgment remain in force."[3] This narrow exception to the principle of finality is "based on the historic power of a court of equity to modify its decree in light of changed circumstances." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2863 at 205 (3d ed. 2021). "The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a willingness to apply its powers and processes on behalf of the party who obtained the equitable relief." *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647-48 (1961). Accordingly, Missouri courts have recognized Rule 74.06(b)(5) applies only to judgments that have prospective effect. *Killingsworth v. Dickinson Theaters, Inc.*, 83 S.W.3d 656, 658 (Mo. App. 2002).

Admittedly, this Court has had few opportunities to expound upon the contours of Rule 74.06(b)(5). This dearth of guidance led all of the parties – and the circuit court – to make an incorrect assumption as to the application and reach of this rule. All assumed Rule 74.06(b)(5) justifies relief from the 2016 judgment if the circuit court concluded this Court would have reversed that judgment under a rational basis analysis had that approach been restored in that appeal rather than in the subsequent *City of Aurora*

---

[3] This rule is substantially similar to Federal Rule of Civil Procedure 60(b)(5) ("FRCP 60(b)(5)"), which allows a court to relieve a party from judgment when "applying it prospectively is no longer equitable." "The reason for the apparent disparity in the expressions of the rules—in one case, that the judgment *remain in force* and, in the other, that the judgment should no longer have *prospective application*—is not immediately evident." *Anderson v. Cent. Mo. State Univ.*, 789 S.W.2d 41, 44 (Mo. App. 1990) (emphasis in original) (citing Nanette K. Laughrey, *Judgments—The New Missouri Rule*, 44 J. of Mo. Bar 11, 22 n.47 (Jan-Feb 1988)). Accordingly, this Court may consider cases interpreting and applying FRCP 60(b)(5) when interpreting and applying Rule 74.06(b)(5). *Id*.

decision. This is incorrect. A change in decisional law is neither necessary nor sufficient to warrant relief from judgment under Rule 74.06(b)(5). United States Supreme Court precedent interpreting FRCP 60(b)(5), which allows a court to relieve a party from judgment when "applying it prospectively is no longer equitable," illustrates this principle.

The Supreme Court has held that a change in decisional law may warrant relief from judgment under FRCP 60(b)(5), but only in specific circumstances. *Agostini v. Felton*, 521 U.S. 203, 215 (1997). For example, relief from judgment *must be granted* if a change in statutory or decisional law makes "one or more of the obligations placed upon the parties … impermissible under federal law." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992). On the other hand, relief from judgment "***may be warranted*** when the statutory or decisional law has changed to make legal what the decree [or injunction] was designed to prevent."[4] *Id.* (emphasis added). But, this flexible approach to determining whether a change in law warrants relief from judgment seemingly applies only to federal institutional reform cases. *Id*. at 383 ("Although we hold that a district court should exercise flexibility in considering requests for modification of an institutional reform consent decree, it does not follow that a modification will be warranted in all circumstances."); *Horne*, 557 U.S. at 450 ("But in recognition of the features of institutional reform decrees, we have held that courts must

---

[4] The same general rules the Supreme Court has applied in deciding whether FRCP 60(b)(5) motions in the context of consent decrees also apply in the context of injunctions. Indeed, the Supreme Court applied *Rufo*, which concerned a consent decree, in *Horne*, which concerned injunctive relief. *See Horne v. Flores*, 557 U.S. 433, 447-50 (2009).

6

take a flexible approach to [FRCP] 60(b)(5) motions addressing such decrees.")

(quotation omitted). In *Horne*, the Supreme Court provided the following reasons for

treating institutional reform cases differently in the context of FRCP 60(b)(5):

(1) "[I]njunctions issued in such cases often remain in force for many years, and the

passage of time frequently brings about changed circumstances"; (2) "[I]nstitutional

reform injunctions often raise sensitive federalism concerns"; and (3) "[P]ublic officials

sometimes consent to, or refrain from vigorously opposing, decrees that go well beyond

what is required by federal law … bind[ing] state and local officials to the policy

preferences of their predecessors[.]" *Id.* at 447-49. Those reasons simply do not apply

here.

In other cases, the Supreme Court has applied a much stricter standard. For

example, the Supreme Court addressed the propriety of modifying a consent decree in an

antitrust case. *United States v. Swift & Co.*, 286 U.S. 106 (1932). In *Swift*, the United

States sought an injunction to dissolve a monopoly alleged to have been created by five

leading meat packers. *Id.* at 110. The parties entered into a consent decree preventing

the meat packers from maintaining a monopoly and prohibiting them from

manufacturing, selling, or transporting 114 enumerated products. *Id.* at 111. The meat

packers sought to modify the consent decree based on changed conditions in the industry,

and the district court sustained their motion. *Id.* at 113-14. The Supreme Court,

however, reversed and held:

> Life is never static, and the passing of a decade has brought changes to the
> grocery business as it has to every other. The inquiry for us is whether the
> changes are so important that dangers, once substantial, have become

7

attenuated to a shadow. No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. ***Nothing less than a clear showing of grievous wrong*** evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

*Id.* at 119 (emphasis added).

Although these cases do not provide much guidance for this case, they at least show that a change in factual or legal circumstances alone is insufficient to warrant relief from judgment. Instead, there are multiple relevant considerations that go into determining whether a court should grant a Rule 74.06(b)(5) motion. As the United States Court of Appeals for the Third Circuit explained:

We believe that the generally applicable rule for modifying a previously issued judgment is that set forth in [FRCP] 60(b)(5), i.e., "that it is no longer equitable that the judgment should have prospective application." It would be a mistake to view either *Rufo* or *Swift* as encapsulating a universal formula for deciding when that point has been reached. Instead, each of those cases represents a response to a particular set of circumstances. A court of equity cannot rely on a simple formula but must evaluate a number of potentially competing considerations to determine whether to modify or vacate an injunction entered by consent or otherwise.

Accordingly, the standard for modifying an injunction cannot depend on whether the case is characterized as an institutional reform case, a commercial dispute, or private or public litigation. Different considerations may have greater or lesser prominence in different cases, not because the cases are characterized one way rather than another but because equity demands a flexible response to the unique conditions of each case.

*Building & Const. Trades Council of Phila. & Vicinity v. N.L.R.B.*, 64 F.3d 880, 888 (3d Cir. 1995).

In this case, the parties and the circuit court focused solely on whether – in the first instance – the municipalities' claims would have been rejected had the case been

decided under the rational basis review later restored to use in *City of Aurora*. They all assumed that, if this was so, the change in decisional law was sufficient to warrant relief from judgment even though it was not the type of change in law that the *Rufo* court explained must result in relief from judgment.[5] This assumption prevented the circuit court from properly weighing the equities to determine whether they warranted relief from judgment under Rule 74.06(b)(5).

For example, but without suggesting any limitation, the circuit court failed to weigh in its evaluation of the equities the extent to which the state could have argued (but did not) that the rational basis analysis employed to adjudicate challenges to local or special laws should be restored in this case as it later would be in *City of Aurora*. Nor did the circuit court consider in weighing those equities the burden that sustaining the state's motion would place on the municipalities, which would be forced to comply with sections 67.287.2 and 479.359.2 immediately upon the 2016 injunction being dissolved.[6]

---

[5]  Indeed, the circuit court held, "once the party seeking relief from an injunction demonstrates a 'significant change in the law' on which the injunction was based, enforcing the injunction is no longer equitable." The circuit court relied on *Agostini*, but *Agostini* did not overrule *Rufo*'s statement that relief from judgment "***may be warranted*** when the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Rufo* 502 U.S. at 388 (emphasis added). Rather, *Agostini* cited *Rufo* approvingly. *Agostini*, 521 U.S. at 215. *Horne* clarified the party seeking relief from judgment must show "that changed circumstances ***warrant relief***," not just that circumstances changed. *Horne*, 557 U.S. at 447 (emphasis added) (citing *Rufo*, 502 U.S. at 383). *Agostini* simply reflects the Supreme Court's willingness to grant relief from judgment due to the special considerations present in federal institutional reform litigation.

[6]  Section 67.287.2 lists multiple services the municipalities must provide, including insurance policies, written orders and policies for a variety of different issues, and improved management and accounting systems. Originally, section 67.287.2 gave the municipalities three years from August 28, 2015, to provide those services. Section 67.287.2 also gave the municipalities six years to have a police department accredited or certified by the Commission on Accreditation for Law Enforcement Agencies or the Missouri Police Chiefs Association or a contract with a police department with such accreditation. Because more than six years has passed since August 28,

And the circuit court failed to give any weight to the importance of finality. *See Wright*, 364 U.S. at 647-48 (1961) ("A balance must thus be struck between the policies of res judicata and the right of the court to apply modified measures to changed circumstances."); *Building & Const. Trades Council*, 64 F.3d at 888 ("[T]he interest in finality of judgments may assume greater or lesser prominence according to the nature of the case … but should not be either deprecated or ignored."). Accordingly, even if this Court would have reached a different conclusion regarding the municipalities' claims after *City of Aurora* than it did before – a question this Court does not here address – that is merely the first step in this analysis under Rule 74.06(b)(5), not the last.

## Conclusion

Because the parties' assumption that a change in decisional law – by itself – was sufficient to warrant relief from judgment under Rule 74.06(b)(5) so thoroughly permeated the proceedings below, as well as the circuit court's judgment, the circuit court failed to properly weigh the equities to determine whether it was inequitable for the 2016

---

2015, the municipalities would be forced to provide those services immediately. Gone would be the grace period the General Assembly saw necessary to provide the municipalities when it enacted SB 5.

10

judgment to remain in force. Accordingly, this Court vacates the circuit court's judgment and remands the case for further proceedings consistent with this opinion.[7]

_____
Paul C. Wilson, Chief Justice

All concur.

---

[7] It should be noted that, even if the state's Rule 74.06(b)(5) motion ultimately fails below or on further appeal, the state is not without recourse. Were the provisions of SB 5 that were held unconstitutional in the 2016 judgment to be reenacted, they would not be governed by the 2016 judgment and, if the state is correct in arguing that such provisions would survive the rational basis scrutiny employed in *City of Aurora*, challenges to those new provisions would fail.