

# SUPREME COURT OF MISSOURI
## en banc

GLENDALE SHOOTING CLUB, INC., )
A Missouri Non-Profit Corporation, )
                             )
    Respondent, )
                             )
v. )    No. SC99701
                             )
WILLIAM K. LANDOLT and )
JERI F. LANDOLT, )
                             )
    Appellants. )

*Opinion issued March 21, 2023*

### APPEAL FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
**The Honorable Craig E. Hellman, Judge**

William K. Landolt and Jeri F. Cashin[1] (collectively, the "Landolts") appeal the circuit court's entry of summary judgment for Glendale Shooting Club, Inc. The Landolts claim the circuit court erred in dissolving a permanent injunction that placed restrictions on Glendale's firing range operations. Because Glendale relied exclusively on a change in law to support its motion for summary judgment and did not assert uncontroverted material

---

[1] Jeri Cashin's last name was erroneously listed in this matter as Landolt. For ease of reference, the appellants are referred to as the Landolts because that is how the appellants have been referred to throughout this litigation and in prior litigation involving the dispute at issue.

facts demonstrating the change in law rendered the continued enforcement of the injunction inequitable, the circuit court erred in entering summary judgment. This Court vacates the circuit court's judgment and remands the case for additional proceedings consistent with this Court's opinion.

## Background

In 1967, Raymond and Veronica Racine acquired approximately 78 acres of property in Franklin County that included a home and outbuildings. In 1976, Glendale acquired approximately 107 acres immediately adjacent to the Racines' property. Glendale acquired this property for use as a gun club and firing range. In 1983, the Racines filed a petition in the circuit court seeking injunctive relief against Glendale. The Racines' petition claimed Glendale utilized its land "for target practice, local, regional and national shooting matches conducted with automatic weapons, handguns, shotguns and high powered rifles" and that noise from Glendale's property "on a daily basis at all hours of the day and night" could be "plainly and loudly heard at [the Racines'] residence, even when the doors and windows to said residence are fully closed." Accordingly, the Racines asked the circuit court to permanently enjoin Glendale from conducting target practice and shooting matches on its property.

In 1987, the circuit court entered injunctive relief limiting operation of the firing range. The court found,

> "at the date of the filing of the Petition and for a period of at least five years then preceding and up to the date of trial, the use of [Glendale's] land as described by the evidence constituted an abatable continuing temporary nuisance and that such use was unreasonable and unusual to the extent that it

2

substantially impaired the right of the [Racines] to peacefully enjoy their own adjoining land."

The court found stray bullets or ricochets on several occasions either hit the Racines' land or violated their land's airspace. The court further found "[t]he evidence presented did convince the court that the sustained noise found by the court to be a nuisance did cause actual inconvenience and physical discomfort to the [Racines.]" Accordingly, the court "permanently enjoined [Glendale] from using or permitting the use of its land and facilities … in such a manner as to constitute a nuisance."

The court's permanent injunction did not completely ban the operation of the firing range as the Racines requested but limited Glendale's shooting operations to abate the trespass and nuisance. Pursuant to the injunction, Glendale was limited to holding only 10 shooting matches per year. Shooting or discharging firearms was restricted to certain times during the day and certain days of the week. There were also limitations on the number of persons shooting handguns or rifles at any given time. Both Glendale and the Racines appealed, and the court of appeals affirmed the circuit court's judgment entering injunctive relief. *Racine v. Glendale Shooting Club, Inc.*, 755 S.W.2d 369 (Mo. App. 1988).

In 1988, the General Assembly enacted section 537.294.[2] The language of the statute purports to grant firearm ranges immunity from nuisance and trespass actions and prohibit courts from enjoining the use or operation of firearm ranges on the basis of noise

---

[2] All statutory references are to RSMo 2016 unless otherwise noted. Section 537.294 was last amended in 2008.

3

or sound emission.[3]  In 1989, the Racines sold their property to the Landolts.  In 1998, Glendale moved to dissolve the permanent injunction.  Glendale claimed the injunction had been rendered absurd and unjust due to the enactment of section 537.294, RSMo 1994, and also due to material modifications made to the shooting range for noise abatement purposes.  The circuit court dismissed Glendale's motion to dissolve the permanent injunction, and Glendale appealed.

The court of appeals reversed the circuit court's judgment.  *Landolt v. Glendale Shooting Club, Inc.*, 18 S.W.3d 101,106 (Mo. App. 2000).  The court of appeals did not reach the merits of Glendale's motion to set aside the injunction.  Rather, it found the circuit court erred in dismissing Glendale's motion.  *Id.*  Specifically, the court of appeals reversed the judgment because the circuit court erred in finding section 537.294, RSMo 1994, inapplicable due to the injunction being entered prior to the statute's effective date.  *Id.* at 105-06.  The court of appeals remanded the case for the circuit court to consider the effect of section 537.294, RSMo 1994, on the enforcement of the injunction and to conduct an evidentiary hearing to determine whether the injunction was "absurd or unjust" in light of

---

[3] Section 537.294.2 provides in full:

> All owners and authorized users of firearm ranges shall be immune from any criminal and civil liability arising out of or as a consequence of noise or sound emission resulting from the use of any such firearm range. Owners and users of such firearm ranges shall not be subject to any civil action in tort or subject to any action for public or private nuisance or trespass and no court in this state shall enjoin the use or operation of such firearm ranges on the basis of noise or sound emission resulting from the use of any such firearm range. Any actions by a court in this state to enjoin the use or operation of such firearm ranges and any damages awarded or imposed by a court, or assessed by a jury, in this state against any owner or user of such firearm ranges for nuisance or trespass are null and void.

4

Glendale's modifications to the shooting range. *Id.* at 106. Following remand, Glendale and the Landolts entered a settlement agreement precluding further litigation over the injunction for a period of not less than 20 years.

After the 20-year period expired, Glendale again petitioned the circuit court to dissolve the permanent injunction pursuant to section 537.294. The Landolts answered by arguing that section 537.294.2 was unconstitutional as it effectuated a taking of their property rights. Both parties moved for summary judgment. The circuit court sustained Glendale's summary judgment motion and overruled the Landolts' counter-motion for partial summary judgment. Thereby, the circuit court entered judgment in Glendale's favor, setting aside the permanent injunction. The Landolts appeal, raising a constitutional challenge to the validity of section 537.294.2.[4]

### Standard of Review

"In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Summary judgment is proper only if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Brockington v. New Horizons Enters., LLC*, 654 S.W.3d 876, 880 (Mo. banc 2022) (quoting *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020)); s*ee also* Rule 74.04(c) (requiring a motion for summary judgment to contain a statement of uncontroverted material facts as to which the movant claims there is no genuine issue, entitling the moving

---

[4] This Court has jurisdiction pursuant to article V, section 3 of the Missouri Constitution.

5

party to judgment as a matter of law).  "The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record."  *Brockington*, 654 S.W.3d at 880 (quoting *Green*, 606 S.W.3d at 116).

**Analysis**

In entering summary judgment, the circuit court set aside a final judgment that imposed injunctive relief limiting the operation of Glendale's firing range.  This Court carefully guards the principle of finality of judgments and will not casually allow a final judgment to be set aside.  *See City of Normandy v. Parson*, 643 S.W.3d 311, 313-14 (Mo. banc 2022).  "This concern with the finality of judgments serves several important interests, including protecting litigants from retrying identical cases and issues, ensuring uniformity of decisions, and promoting judicial economy."  *Id*. at 314 (citing *Am. Eagle Waste Indus., LLC v. St. Louis Cnty.*, 379 S.W.3d 813, 825 (Mo. banc 2012)).  "Most importantly, 'there must always be an end to litigation and a certainty as to the rights of litigants must be achieved so that dignity and respect for judicial determinations will be maintained.'"  *Id.* (quoting *Goldsmith v. M. Jackman & Sons, Inc.*, 327 F.2d 184-85 (10th Cir. 1964)).  For these reasons, this Court has provided very narrow exceptions allowing for relief from judgment in very limited circumstances.  *Id*.  Narrow exceptions to the principle of finality of judgments can be found in Rule 74.06.  Pertinent to this case, Rule 74.06(b)(5) allows a court to relieve a party from a final judgment when "it is no longer equitable that the judgment remain in force."

This Court recently addressed the standard for relieving a party from a final judgment imposing permanent injunctive relief in *Normandy*, 643 S.W.3d 311. In *Normandy*, the circuit court entered a judgment in 2016 permanently enjoining the state from enforcing certain provisions of Senate Bill No. 5. *Id.* at 312-13. Passed in 2015 by the General Assembly, SB5 limited the revenue local governments could collect through citations charging individuals with traffic and municipal ordinance violations. *Id.* Certain relevant provisions of SB5 applied only to municipalities within St. Louis County. *Id.* at 313. The circuit court found these provisions unconstitutional special laws justifying enjoining the state from enforcing the laws. *Id.* at 312-13. This Court affirmed. *Id.* Subsequently, this Court decided *City of Aurora v. Spectra Communications Group, LLC*, 592 S.W.3d 764 (Mo. banc 2019), another case involving a claimed unconstitutional special law. In *Aurora*, this Court restored the rational basis analysis used to examine special law claims. *Id.* at 780-81. In so holding, this Court recognized "[t]he [use of this] rational basis analysis … has been diminished in recent years" and called the opinion affirming the permanent injunction the circuit court issued in 2016 the "final misdirection" in diminishing the use of rational basis analysis for special law claims. *Id.* at 778-79.

Following *Aurora*, the state sought relief from the 2016 permanent injunction. *Normandy*, 643 S.W.3d at 312. The state argued the decision in *Aurora* justified reexamining whether the challenged provisions of SB5 were unconstitutional special laws under rational basis review. *Id.* at 312-13. The circuit court agreed and found the shift in decisional law articulated in *Aurora* provided the basis to set aside its prior permanent injunction. *Id.* This Court reversed. *Id.* at 317. The Court found the circuit court erred in

7

setting aside the permanent injunction because it "failed to properly weigh the equities to determine whether it was inequitable for the 2016 judgment to remain in force" as required by Rule 74.06(b)(5). *Id.* Specifically, this Court held "a change in factual or legal circumstances alone is insufficient to warrant relief from judgment." *Id.* at 316. "Instead, there are multiple relevant considerations that go into determining whether a court should grant a Rule 74.06(b)(5) motion." *Id.* "A court of equity cannot rely on a simple formula but must evaluate a number of potentially competing considerations to determine whether to modify or vacate an injunction entered by consent or otherwise." *Id.* In other words, this Court in *Normandy* made clear that a change in fact or law on its own is insufficient to set aside a permanent injunction. There must also be a showing of inequity demonstrating the necessity of vacating or modifying a permanent injunction.

In *Normandy*, this Court provided examples of equities relevant to determining whether to set aside the permanent injunction at issue in the case. *Id.* at 316-17. The Court highlighted the importance of finality of judgments and found the circuit court failed to weigh the extent to which the state in the original 2016 litigation could have but failed to argue the provisions of SB5 were constitutional under rational basis review. *Id.* The Court also found the circuit court failed to consider the burden vacating the injunction would place on concerned parties due to the passage of time and reasonable reliance on the Court's previous ruling. *Id.* at 317.

In this case, Glendale moved for summary judgment to dissolve the permanent injunction restricting its operations. In support of its motion, Glendale relied exclusively on the enactment of section 537.294, expressly stating its motion was "based solely on

8

statutory changes since this Court entered the injunction at issue[.]" While the enactment of section 537.294 may constitute a material fact supporting a finding that the continued enforcement of the injunction is inequitable, Glendale did not argue or assert uncontroverted material facts demonstrating the unjust effects of the injunction in light of this change in law.

This Court reviews the summary judgment record "in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Brockington*, 654 S.W.3d at 880 (quoting *Green*, 606 S.W.3d at 116). Nothing in the circuit court's judgment or the summary judgment record suggests the circuit court weighed the equities at issue and determined the continued enforcement of the injunction to be inequitable based on the enactment of section 537.294. Reviewing the record in the light most favorable to the Landolts and giving them the benefit of all reasonable inferences, the Court cannot assume the circuit court weighed the equities and determined the injunction to be unjust based on the enactment of section 537.294. Because Glendale did not assert or demonstrate the change in law made the continued enforcement of the injunction inequitable, Glendale failed to establish it "is entitled to judgment as a matter of law." *Id.* (quoting *Green*, 606 S.W.3d at 115).

Viewed in the same light, the record does not reflect Glendale's motion for summary judgment established uncontroverted material facts relating to other factors the parties asserted that may affect the equity of the injunction. For example, in its petition, Glendale claims there have been multiple changes to the property and operation of the shooting range resulting in substantial noise abatement that could suggest the injunction's continued

9

enforcement would be inequitable. Conversely, in their answer, the Landolts dispute such changes have been made and result in substantial noise abatement. In fact, the Landolts assert in their answer and other documents filed in the circuit court that the injunction should remain in force because stray bullets trespass onto their property and the shooting range causes "extreme vibrations" disrupting their privacy and the enjoyment and market value of their property. As a result, there are numerous factual issues that appear to be disputed and bear on the equities of continued enforcement of the injunction. As this Court stated in *Normandy*, a change in factual or legal circumstances alone is insufficient basis to set aside an injunction, and the party seeking relief from judgment must also assert and demonstrate the change in fact or law renders the injunction's continued enforcement inequitable. 643 S.W.3d at 314-17.[5] Glendale failed to include any consideration of these factors in its motion for summary judgment, much less establish corresponding uncontroverted material facts. As a consequence, the record fails to reflect the circuit court weighed the equities and determined the injunction to be unjust; therefore, the circuit court erred in entering summary judgment in Glendale's favor.

Requiring Glendale to demonstrate inequity resulting from the continued enforcement of the injunction is consistent with this Court's holding in *Normandy* and is not contrary to this Court's holding in *Goerlitz v. City of Maryville*, 333 S.W.3d 450 (Mo.

---

[5] While a change in decisional law was at issue in *Normandy*, the same rationale applies with respect to the change in statutory law at issue here. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992) (holding relief from judgment may be warranted when "statutory or decisional law has changed to make legal what the decree was designed to prevent").

10

banc 2011). In *Goerlitz*, the city of Maryville operated a gun range on property adjacent to Goerlitz's home, and Goerlitz filed a petition in the circuit court alleging nuisance. *Id.* at 452. Goerlitz asked the circuit court to award damages and enter an injunction prohibiting the city from operating the gun range on the property. *Id.* The court entered summary judgment in the city's favor. *Id.* This Court affirmed, citing section 537.294, RSMo Supp. 2009. *Id.* at 456. A threshold question was whether Goerlitz's claim for injunctive relief was governed by the law in effect when the circuit court entered judgment or the version of section 537.294 that was in place at the time she filed her suit.[6] *Id.* at 453. This Court held it was the current version of the statute rather than the version in effect on the date Goerlitz filed her petition in the circuit court because "an injunction looks forward by addressing what conduct or actions will be permitted in the future." *Id.* This holding poses no conflict with the holding in this case or this Court's decision in *Normandy* because the issue here is not which version of section 537.294 applies in determining whether an injunction is warranted but whether to dissolve an injunction that was entered prior to a change in the law.

To further justify applying the current version of section 537.294 to Goerlitz's claim for injunctive relief, this Court, however, quoted language from the court of appeals' 2000 *Landolt* opinion that appears to have misstated the law. *Goerlitz* quoted *Landolt* as holding "when the legislature amends the substantive law on which an injunction is based, the injunction may be enforced only insofar as it conforms to the changed law." *Goerlitz*, 333

---

[6] During the pendency of Goerlitz's litigation against the city, the General Assembly amended section 537.294.

11

S.W.3d at 453 (quoting *Landolt*, 18 S.W.3d at 105). As discussed above, the court of appeals in *Landolt* reversed the circuit court's dismissal of Glendale's 1998 motion to dissolve the permanent injunction. 18 S.W.3d at 105. In that decision, the court of appeals correctly recognized "a permanent injunction based on a condition subject to change may be vacated or modified in order **to avoid unjust or absurd results** when a change occurs in the factual setting or the law which gave rise to its existence." *Id.* (emphasis added) (internal quotations omitted). The court went on to state, however, that when there is a change in substantive law, an "injunction may be enforced only insofar as it conforms to the changed law" and neglected to instruct the circuit court to determine on remand if the enforcement of the permanent injunction would be "unjust or absurd" in light of the change in law. *Id.* This omission suggests a change in statutory law alone can constitute a sufficient basis to dissolve a permanent injunction absent finding its continued enforcement inequitable. While a change in statutory law can suffice to dissolve a permanent injunction, the party seeking relief from the judgment must demonstrate the change in statutory law renders its continued enforcement inequitable. To the extent *Goerlitz* or *Landolt* are interpreted to hold that a change in statutory law can alone constitute a sufficient basis to vacate or modify a permanent injunction without a finding the change in law results in inequity, they should no longer be followed.[7]

---

[7] The change of law asserted in this case – enactment of section 537.294 – is the same change of law asserted in *Goerlitz* and *Landolt,* but no challenge to the constitutional validity of the statute was raised in those cases. If the circuit court finds the existing terms of the injunction are inequitable in light of section 537.294 and/or other considerations, sufficient to warrant vacating or modifying the injunction accordingly, the court can

12

In this case, the circuit court dissolved the permanent injunction restricting Glendale's firing range operations in the absence of any assertion of uncontroverted material fact demonstrating the change in law rendered its continued enforcement inequitable. Glendale, the Landolts, and the circuit court, like the parties and court in *Normandy*, incorrectly assumed a change in law alone may justify relief from an injunction. *C.f.* 643 S.W.3d at 314, 317. This assumption prevented the circuit court from considering the equities to determine whether relief from the permanent injunction judgment was warranted. For this reason, the circuit court erred in entering summary judgment for Glendale. Accordingly, this Court vacates the circuit court's judgment and remands the case for proceedings consistent with this Court's opinion.[8]

_____

W. Brent Powell, Judge

All concur.

_____

consider the Landolts' arguments that section 537.294.2 effectuates an unconstitutional taking of their property rights if the issue remains relevant. If changed circumstances do not warrant modifying or vacating the injunction, even assuming the change in law is valid, there is no reason to reach the constitutional question. *See State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n*, 687 S.W.2d 162, 165 (Mo. banc 1985) ("A court will avoid the decision of a constitutional question if the case can be fully determined without reaching it.").

[8] Landolts' Motion for Leave of Court to Amend Points Relied On by Interlineation filed on November 4, 2022 and taken with the case is sustained and had no impact on the resolution of this appeal.

13